Canadian Bank of Commerce v. Alfred J. Coumbe.

*Accommodation acceptances—Contracts of suretyship—Notice to manager of branch corporation—Letters in evidence—Proof of admissions—Credibility.*

An acceptor whose liability has not been changed by subsequent dealings to his prejudice or against his rights, can be sued on his acceptance, and is liable, in form, as acceptor, as every contract must be sued according to its terms.

Any obligation, whatever its form, may be shown to have been made for the debt or liability of another, and where so made, it is a contract of suretyship, and if the surety is held to pay it he may sue for reimbursement.

A creditor who knows that his debtor is only a surety is bound to take no steps which will change the principal's liability without the surety's consent.

Campbell shipped lumber on vessels owned by Graham, who had a part-
nership interest with him.    Coumbe was Campbell's agent, and was
to receive half the profits of the lumber business.    It was arranged
that Coumbe should settle freight bills with Graham by accepting
Graham's drafts on the Canadian Bank of Commerce, and that the
drafts were to be taken up by Campbell out of the proceeds of sales.
In an action by the bank against Coumbe upon these acceptances it
was *held* (1) that defendant's testimony that he told Graham
and Campbell that he would accept the drafts if they would not
hold him responsible, and that he was not himself a partner and
was neither expected nor bound to provide for freight, would justify
the jury in finding that the acceptances were accommodation accept-
ances; (2) that in order to prove the relations of the parties and the
consideration for the acceptances defendant might properly show the
details of the shipments, including bills of lading and accounts of the
several transactions; (3) that the jury might consider plaintiff's course
in discounting the drafts before acceptance and in treating the maker
as the primary debtor.

An accommodation acceptance stands upon its legal form if the drawee has
not had notice that it is only for accommodation; but if he has had
notice he cannot treat the maker as surety and the acceptor as
principal except for the purpose of choosing his form of action on
the acceptance.    The acceptor must be treated like any other surety
so far as relates to prejudicing his rights.

Where a bank is a corporation consisting of a number of branches, and
the resident manager of each branch, though keeping its business
distinct, is treated as an agent of the entire corporation, and drafts
on the bank are indorsed by one branch to another so that the man-
ager of the indorsee branch or his subordinates sees to its presenta-
tion, an acceptor dealing with a manager may fairly infer that he is
the proper person to be notified of anything affecting the acceptor's
responsibility, if he has no notice or knowledge to the contrary.

Notice to a bank on discounting paper, that it is accepted only for accom-
modation, affects the bank in case, only, it makes arrangements with
some of the parties without consulting the others.

An accommodation acceptor of paper may properly seek information
from the agent or manager of a bank to which the paper is to be
paid, as to the condition of the person whom both understand to be
really responsible on it.    And in a suit by the drawee against the
acceptor, the latter may show his condition and the agent's state-
ments or admissions.

Where paper drawn upon a bank and accepted for accommodation has
been taken up, it cannot be sued as belonging to the bank, or sued
at all if known to be accepted for accommodation.

A defendant cannot put in evidence a letter written by him to the agent
of defendant after the beginning of the suit, unless the reply con-

tained material admissions; and in that case it could only be introduced to explain the bearing of the letter called out by it.

Omission of a party to a suit to answer a letter written to him by the other party pending the litigation cannot be treated as an admission of the adverse party's claims.

Where during litigation a former agent of one of the parties makes admissions, they cannot be shown in the case unless for their bearing on his own credibility as a witness.

Error to Wayne.    Submitted Oct. 20.    Decided Jan. 11.

ASSUMPSIT.    Plaintiffs bring error.    Reversed.

*Julian G. Dickinson* for plaintiff in error.

*Carpenter & McLaughlin* and *Alfred Russell* for defendant in error.    An accommodation acceptor, if known to be such, is discharged by an extension of time given to the drawer: 2 Dan. Neg. Inst. § 1334; *Ewin v. Lancaster* 6 B. & S. 572; an accommodation acceptor is a surety: *Parks v. Ingram* 22 N. H. 292; *Smith v. Shelden* 35 Mich. 48.

CAMPBELL, J.    Plaintiff, which is a Canadian bank having its home office in Toronto, with 31 branches in different parts of the Dominion, including one at St. Catherine's and one at Windsor, sued defendant as acceptor of two drafts drawn by J. C. Graham, for $1745.16 and $1360.65, dated September 1 and October 31, 1876, at three months, and sixty days, and payable at Windsor.    Both drafts were made payable to the order of " The Canadian Bank of Commerce " and both were endorsed specially by the manager of the bank at St. Catherine's, to the order of the " Canadian Bank of Commerce, Windsor."    Both were discounted for Mr. Graham, the drawer, before acceptance.

The bank charter was not given in evidence, and there is nothing but the course of business to show what it was. There was nothing to show the branches to have been distinct corporations, and had there been it would have defeated this action, for want of endorsement by the Windsor bank. This becomes somewhat material in view of some points raised on the trial.

The defence rested on a claim that the acceptances were accommodation acceptances, which fact it is claimed was known to the bank—and that defendant had been discharged by dealings between the bank and Graham, whereby time was extended on security.   It was further claimed that the bank was suing this paper in fact for Graham, and had no real interest in the paper, which had been really or practically taken up by Graham or some one else in a similar interest.

Upon most of the questions bearing on the defence there was a conflict of testimony.   There was testimony—although not without dispute—that the paper was accommodation paper—that notice had been given to a person or. persons claimed by defendant to be such agents as might be properly notified—that securities sufficient to protect the entire liabilities of Graham, except some late discounts, were held by the bank, and that time had been given Graham, and partial payments made on the consolidated indebtedness. There was also testimony, on which questions arise, of statements on defendant's inquiry, that the bank held no claims against him.   Some of these were before, and some after suit.

The jury found for defendant.   Plaintiff assigns numerous errors, which may, however, be dealt with under a few heads.

The first question of importance is whether, if the acceptance was for accommodation, and known to be so, the acceptor can set up such a defence against the holder.   It is claimed that having by the form of his contract assumed a primary obligation, he cannot be allowed to change it into one which is collateral.

If his liability has not been changed by subsequent dealings to his prejudice or against his rights, there can be no doubt he may be sued.   And if liable at all, he must be liable in form as acceptor, because every contract must be sued according to its terms.   *Inkster v. First Nat. Bank of Marshall* 30 Mich. 143.

But it is always competent to show that any obligation, whatever its form, was in fact made for the debt or liability

of another, and where this is the case the contract is one of suretyship, and the surety if he is held to pay it may sue for reimbursement. *Smith v. Shelden* 35 Mich. 42. And when a creditor knows that his debtor is a surety, he is bound to take no steps which will change the liability of the principal, without the surety's consent. *Barron v. Cady* 40 Mich. 259. This doctrine is too elementary to require any discussion.

There was testimony in this case tending to show that these drafts were part of a series drawn and accepted from time to time to realize on freights which were to accrue and be collected out of timber shipments, made on behalf of George Campbell, under a freighting arrangement in which Campbell and Graham were interested as partners. Defendant had an agreement with Campbell that he should be paid for his services as Campbell's agent in this and other matters one-half of the profits of the lumber business. Campbell had been in the habit of settling the freight with Graham, but by the arrangement referred to, Graham was to draw on defendant who was to accept the drafts, which were to be paid by Campbell out of proceeds of sales or otherwise. Defendant swears he told Graham and Campbell that he would accept if they would not hold him responsible in any way. He swears he was not himself a partner, and the facts were not such as to make him such, if not so agreed. According to his testimony he was under no duty to make any provision for the freight, and was not expected to.

Under such circumstances the jury might very properly find the acceptances were accommodation acceptances. If the bank did not have notice of it, they would stand upon their legal form. But if the bank had notice it could not treat Graham as surety, and defendant as principal, for any other purpose than choosing the form of action. So far as prejudicing defendant's rights is concerned he must have been regarded—on such a finding—like any other surety.

In order to prove the relations of the parties and the consideration for the acceptances, defendant was allowed to show the details of the shipments, including bills of lading,

and accounts of the several transactions, all which was objected to. We do not think it was improper to receive evidence bearing on the consideration or circumstances of the drawing. And we also think that the course of the bank in discounting the drafts before acceptance, and treating Graham as their own primary debtor, was all pertinent and properly left to the jury for what it was worth in their view.

We think there was testimony which, although controverted, had a tendency to show that this paper was secured and Graham allowed time on it with other personal claims against him, and that defendant was not asked for and did not give consent. There was also disputed but pertinent testimony showing delay and other facts bearing more or less on the understanding of the bank, and the real control of·the paper as for Graham's benefit.

But the notice chiefly relied on was, although also contradicted, given to Mr. Byron E. Walker, as manager of the bank at Windsor. The validity of this notice, if given, is a chief question in the case. Plaintiff insists that the alleged notice, if given, was not given to Walker officially, and also that if it had been so given, Walker was not the proper person to be notified.

The testimony of defendant tends to show that immediately or shortly after the arrangement was made with Graham and Campbell, he informed Walker fully concerning this arrangement. There is room, no doubt, for an argument that he did this as a matter of private confidence, and not officially. But the defendant says he gave it to Walker supposing he was notifying the bank, and also informed another bank in Windsor to the same effect. This, he says, was done before any drafts were accepted. It was, therefore, for the jury to say whether defendant did as he claims he did.

But it is also claimed that Walker only represented the Windsor bank, and could not bind the St. Catharine's or Toronto banks, which were distinct bodies. If this were so, as already suggested, the acceptances have never been trans-

ferred by the Windsor bank. But, as the record stands, we think there was evidence for the jury sufficient to make out authority to receive notice. The bank appears to be one corporation with several offices, and the resident managers appear to be treated as agents of the corporation, although keeping their own branch matters distinct as far as they can. The course taken in regard to the transmission and handling of this paper show that it was sent to Windsor for acceptance, and payable there, so that Mr. Walker or his subordinates saw to its presentation to defendant. In the absence of notice or knowledge to the contrary, we think he might fairly infer that the proper person to be notified of anything affecting his responsibility would be the agent with whom he dealt. Such is the general rule as to those dealing with agents, and defendant says he had no knowledge or supposition that Walker had not proper authority in such matters. *Peoria M. & F. Ins. Co. v. Hall* 12 Mich. 202 ; *Russell v. Sweezey* 22 Mich. 235 ; *Sanford v. Nyman* 23 Mich. 326 ; *Westchester F. Ins. Co. v. Earle* 33 Mich. 143.

Accommodation paper is by no means rare, and it is very common to inform banks discounting it of its quality. It only affects them when they propose to make arrangements with some of the parties without consulting the rest. As the acceptances were made and payable in Windsor at the agency of the same bank that discounted the drafts, the course taken by defendant—as he states it—was a natural one.

In this same connection defendant was allowed to show that one of the drafts in this series which became due after the acceptance of the first and before that of the second draft sued on, was presented for payment with a memorandum annexed by Campbell to the effect that defendant could not be seen, but that the draft was good and would be paid the next day, and that Campbell provided the funds with which defendant paid it. This had some tendency with the other testimony to show that the bank understood Campbell's connection with the papers, and it also bore upon the course of business between the parties themselves

in regard to the liability. It was not error to admit it. This whole course of business was pertinent to show their relations.

Another question concerning Walker's authority arises in connection with a visit made to him by defendant in 1877 —some months after the last acceptance matured and had been protested. Defendant testified to calling on Walker by reason of anxiety concerning these drafts which he had credited as paid and supposed to have been paid or taken up by Campbell. He further testified to a conversation in which Campbell's affairs were discussed, and Walker told him he might be sure the bank held nothing against him. It was certainly competent to show Campbell's condition if it was—as defendant says it was—mentioned in the conversation with Walker and thus made material in seeking as well as giving information. And defendant had a right to seek this information from the agent of the Windsor bank where the paper was payable, and where he himself resided, and would probably be urged if anywhere for payment. Under these circumstances Walker's agency would make his statements evidence against plaintiff, and in the nature of admissions, having such weight as the jury might think them entitled to. It could hardly be claimed that if either Campbell or Graham took up this paper it could properly be sued as belonging to the bank, or sued at all if accepted for accommodation. All this was a question of fact.

Defendant was allowed under objection to put in evidence a letter written by himself to the bank reciting a long train of facts relating to his defence, with a reply from the manager stating that the letter was received and he would advise him further after hearing from the St. Catharine's branch. If the reply had contained any admissions it might be material. But this letter was written after suit was commenced, and whenever written could only be admissible to explain the bearing of the letter which it called out, if that had contained any acquiescent statements. As it did not this was practically allowing defendant to make his own case by his own statements. Omission to answer a letter pend-

ing a controversy cannot be held an admission of the adverse party's claims. This was erroneous.

It was also error to allow the jury to consider the statement of Mr. McLaughlin concerning an interview with Mr. Walker pending the suit. Mr. Walker was at this time inspector of the banks belonging to plaintiff and had no powers of management and no office which entitled him to deal with third persons. It could make no difference what he admitted under such circumstances, except as bearing on his credibility as a witness.

For these errors the judgment must be reversed with costs and a new trial granted. We have not deemed it necessary to consider the omission to give more specific charges concerning agency, because the questions last referred to were the principal ones requiring it.

The other Justices concurred.