ELLIS *v.* PHILLIPS.

1. PRINCIPAL AND SURETY—PUBLIC WORKS—GENERAL CONTRACTOR WITH BOND—SUBCONTRACTOR WITHOUT BOND.

General contractor on public construction project which had furnished surety bond agreeing to save city harmless from any liens for labor or materials became surety for subcontractor who was working without bond.

2. SAME—NATURE OF RELATIONSHIP.

Suretyship is a contractual relation resulting from an agreement whereby one person, the surety, engages to be answerable for the debt, default, or miscarriage of another, the principal.

3. SAME—REIMBURSEMENT OF SURETY.

A surety is entitled to reimbursement when required to pay its principal's obligation.

4. SAME—SUBROGATION.

An obligation which is discharged by one not primarily liable for it entitles the party who makes such payment, in order to prevent the unearned enrichment of one party, at the expense of another, to reimbursement, contribution, and exoneration through the performance of the original obligation and application thereto of all securities and collateral rights held by the creditor.

REFERENCES FOR POINTS IN HEADNOTES

[1] 50 Am Jur, Suretyship § 10 *et seq.*
[2] 50 Am Jur, Suretyship § 2.
[3, 5] 50 Am Jur, Suretyship §§ 221, 242.
[4] 50 Am Jur, Subrogation § 49 *et seq.*
[6] 19 Am Jur, Equity § 100 *et seq.*
[7] 50 Am Jur, Suretyship § 225.
[8, 9] 19 Am Jur, Equity § 111.
[10] 50 Am Jur, Suretyship § 31 *et seq.*
[11] 20 Am Jur, Evidence § 245 *et seq.*
[12] 3 Am Jur, Appeal and Error § 896.
[13] 19 Am Jur, Equity § 121 *et seq.*
[14] 3 Am Jur, Appeal and Error § 1210 *et seq.*

5. SAME—REIMBURSEMENT.

The right of a surety to reimbursement from the principal springs up at the time of entering into the relation and is fully consummated when the surety is compelled to pay the debt.

6. EQUITY—JURISDICTION—ASSUMPSIT—ADEQUATE REMEDY AT LAW.

The remedy of assumpsit for money paid by a surety does not oust courts of equity of jurisdiction, where assumpsit does not furnish adequate relief to surety who is required to pay principal's obligation.

7. PRINCIPAL AND SURETY—EQUITY JURISDICTION TO COMPEL PAYMENT.

A surety may file a bill in equity to compel the principal debtor to exonerate him from liability by payment of the debt that is due, but unpaid, provided no rights of the creditor are prejudiced thereby.

8. TRIAL—TRANSFER OF CAUSES—LAW TO EQUITY—INSOLVENCY.

The insolvency of the party, against whom a setoff is claimed, is a ground for the exercise of equitable jurisdiction in receiver's proceeding to recover balance due subcontractor from defendant public works project general contractor which had assumed relation of surety for subcontractor who had failed to furnish bond for payment of bills for labor and materials and had not paid such bills, hence, transfer of cause from law to equity side of court was proper (CL 1948, § 611.2).

9. PRINCIPAL AND SURETY—PUBLIC WORKS PROJECT—SUBCONTRACTOR WITHOUT BOND—GENERAL CONTRACTOR—EQUITY—RECEIVERS.

Defendant general contractor on public works project who had become surety for subcontractor because of latter's inability to furnish bond was properly directed to pay latter's unpaid creditors from fund withheld from subcontractor after action, commenced by receiver for subcontractor, had been transferred to equity side of the court, the insolvency of the subcontractor being a sufficient basis for affording the general contractor, secondarily liable for the subcontractor's debts, equitable relief by allowance of equitable setoffs to receiver's claim for balance due under subcontract, thereby preventing the subcontract fund from becoming an asset of the receivership.

10. SAME—PUBLIC WORKS PROJECT—SUBCONTRACTOR—EQUITY—RECEIVERS—WINDING-UP CORPORATION.

No conflict existed between equitable relief afforded public works project general contractor, as surety for subcontractor corporation unable to furnish bond, by way of requiring such surety to make direct payment to subcontractor's creditors and stat-

utory provisions for marshaling and distribution of corporate assets, since the theretofore unpaid subcontract fund never became an asset of the receivership involved in the dissolution and winding-up of the corporation, hence, the trial court had jurisdiction to effect relief granted (CL 1948, §§ 640.1–640.8).

11. SAME—EVIDENCE—PUBLIC WORKS—GENERAL CONTRACTOR—SUB-
CONTRACTOR.

Admission in record of contract and related bonds between general contractor and city with respect to public works project was proper in suit between receiver of corporate subcontractor which had not furnished a performance bond and general contractor, where basis of relief sought by latter was the danger of being made to pay twice for the subcontractor's contract by reason of the general contractor's suretyship relation and such contract and bonds were the best evidence of defendant's contention.

12. APPEAL AND ERROR—FINDING OF TRIAL COURT—COMPLETION OF
SUBCONTRACT—GENERAL CONTRACTOR FOR PUBLIC WORKS.

Trial court's finding that subcontractor had failed under its subcontract by not completing the contract and in failing to file a performance bond *held*, substantiated by testimony adduced in suit by receiver of subcontractor against general contractor for public works project, hence, determination made is not reversed.

13. EQUITY—PUBLIC WORKS PROJECT—GENERAL CONTRACTOR'S DIRECT
PAYMENT OF SUBCONTRACTOR'S LIEN CLAIMANTS.

Equitable relief to general contractor on public works project, who proved that he was in danger of having to pay twice for subcontractor if latter's lien claimants for labor and materials were not paid directly by the general contractor, was properly ordered to make such payment in order to effect disposition of the entire matter, the plaintiff receiver of corporate subcontractor being entitled only to balance of contract less cost of performance, including payment of material and labor claims, since the general contractor was a surety for the subcontractor that had been unable to furnish a bond (CL 1948, § 570.101 *et seq.*).

14. APPEAL AND ERROR—REMAND—PUBLIC WORKS PROJECT—SUBCON-
TRACTOR'S CREDITORS—NOTICE.

Suit by receiver of subcontractor against public works project general contractor which had become surety for subcontractor because of latter's inability to furnish bond for balance due on subcontract is remanded for opening proofs only as to creditors to ascertain whether they had filed timely statutory notices or

instituted proceedings on defendant's bond within time allowed by statute (CL 1948, § 570.101 *et seq.*).

Smith, Edwards, and Souris, JJ., dissenting in part.

Appeal from Wayne; Holbrook (Donald E.), J., presiding. Submitted January 11, 1961. (Docket No. 71, Calendar No. 48,382.) Decided September 21, 1961.

Assumpsit by Howard J. Ellis, receiver for Redford Cement Floor Company, a Michigan corporation, against William J. Phillips, doing business as Phillips Construction Company, for sums due on subcontract. Case transferred to equity side of court during trial. Decree entered determining amounts due third parties furnishing labor and materials and directing payment to them from balance due on subcontract. Plaintiff appeals. Affirmed in part, and remanded for opening of proofs as to whether other creditors had perfected their statutory rights under general contractor's bond.

*Joseph A. Luyckx,* for plaintiff.

*Mansfield, DeWitt, Sulzbach & Jenkins (Merle R. Jenkins,* of counsel), for defendant.

Kavanagh, J. Plaintiff was appointed receiver of Redford Cement Floor Company, a Michigan corporation, on February 7, 1958. Redford Cement Floor Company (hereinafter referred to as Redford) during its existence engaged in the business of installing flat cement in commercial projects. Defendant William J. Phillips, doing business as Phillips Construction Company, is a general contractor. He had not engaged in actual construction work for 3 or 4 years prior to the trial of this case, but carried on his general contracting through subcontractors.

Plaintiff receiver on February 21, 1958, instituted this action in assumpsit declaring on a contractual agreement and also on the common counts. The declaration alleged that Redford had fully performed a subcontract with defendant and had supplied labor and materials to defendant, and that there was owing to plaintiff under the subcontract for labor and materials furnished a balance in the amount of $15,033.09.

Defendant answered denying that Redford had performed its subcontract; that defendant had breached the subcontract; or that any sum remained owing to Redford or plaintiff.

At trial, documents consisting of a contract between Phillips and the city of Detroit, a performance bond, and a payment bond, comprising defendant's exhibit F, were admitted in evidence over the objections of plaintiff. These documents tended to show that on February 5, 1957, defendant entered into a contract with the city of Detroit for certain construction work on the Detroit housing commission's Brewster project; that the amount of said contract was $52,549; and that in connection with said contract defendant furnished a performance bond with Travelers Indemnity Company as surety. Further testimony developed that defendant, on February 8, 1957, invited bids on cement work and Redford submitted a proposal for the work. The testimony disclosed that on February 19, 1957, defendant and Redford executed an agreement, prepared and drafted by defendant. This contract enumerated the materials, equipment, and services to be supplied by Redford according to the plans and specifications of the Detroit housing commission's architect. Defendant agreed to pay Redford in monthly payments the sum of $31,731 for materials and labor. Payments were to be made in accordance with defendant's agreement with the Detroit housing commission.

The subcontract included a provision that Redford would furnish bond and insurance certificates as required. It developed that Redford was unable to secure a bond, since it had not been in business long enough and was not sufficiently capitalized. Mr. Bull, president and general manager of Redford, went to defendant and explained Redford's predicament, and offered to withdraw from the subcontract. Although there was conflict in the testimony, defendant said he thought Redford was going to furnish a bond; that he never informed Redford it did not have to furnish a bond; that about a month after the execution of the subcontract Redford indicated it could not secure a bond and that he "let him go ahead." Redford began work under the subcontract in April, 1957, and allegedly completed the work the latter part of August, 1957. Shortly thereafter Redford went into receivership.

Defendant did not pay for the work done by Redford in monthly payments as provided by the terms of the subcontract. Redford claims that because of defendant's refusal to pay it became short of funds, and eventually authorized defendant to pay some of its suppliers to the extent of $14,150.78. Defendant admitted owing a balance of $15,033.09 on the subcontract.

After Redford had allegedly completed its work, defendant asserted Redford had left certain work unfinished as represented by deficiency lists received by defendant from the city of Detroit in connection with his contract. These items were relocation of fences and poles, repair of cracked cement, repair of rough concrete surfaces, repair of a retaining wall, cleaning away rubble, and failure to waterproof concrete. Defendant claims he expended $1,170.73 for curing the deficiencies. Mr. Bull, testifying for Redford, stated Redford was not responsible for most of these deficiencies and that a number of the items

were not called for under Redford's subcontract or by the specifications.

During the trial defendant moved to transfer the cause from the law side to the equity side of the court, alleging equitable defenses which he should be permitted to present. Over objections of plaintiff, the trial judge entered an order transferring the cause to the equity side. The alleged equitable defenses were: Redford was indebted to certain persons for materials and labor furnished on the job. Defendant had furnished the surety bond agreeing to save the city of Detroit harmless from any liens for labor and materials. As such it became surety for Redford, a subcontractor who was working without bond. If defendant were required to pay the $15,033.09 balance to plaintiff, defendant eventually would be required to pay Redford's material and labor suppliers who were owed an amount approximately equal to the unpaid balance on Redford's subcontract.

The trial court, at the conclusion of proofs, ruled that $240.75 should be allowed defendant for work done and materials furnished to complete the job. The court further found that plaintiff receiver stood in the same position as the assignor, Redford Cement Floor Company, and that any defenses that could be raised against Redford could be raised against the receiver. In its opinion the court found that Redford had not completed its contract in that it had not completed its work and had not furnished a surety bond.

The trial court found defendant to be a surety in fact and in law and one who should be protected from having to pay the receiver and then pay twice for the same work by having to pay Redford's creditors who could collect on defendant's payment bond.

The trial court decreed payment should be made by defendant directly to Redford's creditors in the

amount of $15,033.09 from the fund established by defendant paying into court $2,532.33 and the sum of $12,500.76 paid into court by the garnishee defendant. The amount paid into the fund by defendant represented the difference between the amount unpaid by Phillips on the subcontract and the amount garnisheed at the commencement of the action.

The trial court further decreed that defendant could offset claims of Redford's creditors against the action of the plaintiff receiver; that the same constituted an equitable setoff; and that full disbursement of such claims would constitute complete satisfaction of defendant's liability to the plaintiff receiver.

On entry of decree, plaintiff appeals contending:

(1) There was no basis for the lower court's action in transferring this cause from the law side of the court to the equity side.

(2) The lower court was not justified in allowing defendant equitable setoffs to the claim of plaintiff under the circumstances; there was nothing in the record to support such equitable setoffs as being founded on any presently existing determined, valid claims of defendant against the plaintiff.

(3) There was no basis for the lower court taking jurisdiction over any asset of the receivership and making disposition of it while such asset was under the control of the court having jurisdiction of the receivership.

(4) For the lower court to take jurisdiction over and make disposition of such an asset nullifies the statutes governing dissolution and wind-up of corporations.

(5) The lower court erred in admitting into the record a certain contract between the city of Detroit and defendant together with related bonds furnished by defendant to the city of Detroit.

(6) The lower court erred in holding that the corporation for which plaintiff is receiver had failed un-

der its subcontract in 2 particulars: first, to complete the work in accordance with specifications; and second, to furnish a bond as required by the subcontract.

(7) The lower court erred in undertaking to adjudicate the status, the rights, and the liabilities of persons not parties to this suit without proofs in the record of the status, rights, and liabilities of such persons.

After decree and during the time appeal to the Supreme Court was pending, pursuant to an order of this Court, a stipulation was entered into by the parties permitting the deposition of the clerk of the court for Wayne county to be taken, the deposition to constitute in full the additional testimony requested by defendant-appellee in his motion to this Court. The stipulation further provided such additional testimony would be included as a part of the record on appeal in this cause. The trial judge entered an order to that effect. The deposition consisted in the clerk identifying the files and records in 2 Wayne county circuit court cases—one a suit by Hydraulic Concrete Breaking Company and People of the State of Michigan, for the use of Hydraulic Concrete Breaking Company, Inc., a Michigan corporation, plaintiffs, *v.* William J. Phillips, doing business under the name Phillips Construction Company, and Travelers Indemity Company, a Connecticut corporation, defendants; and the other a suit in the Wayne county circuit court by People of the State of Michigan, for the use and benefit of Koenig Coal & Supply Company, a Michigan corporation, and Koenig Coal & Supply Company, a Michigan corporation, plaintiffs, *v.* William J. Phillips, doing business as Phillips Construction Company, and Travelers Indemnity Company, a Connecticut corporation, defendants. The files and records disclose summary judgments were entered against defendants in each of these 2

suits—in the first case for the sum of $2,024.05 damages and costs; and in the second case for the sum of $8,767.35 damages and costs. In each case satisfaction of judgment was filed, indicating payment by defendants of 2 of the claims against Redford covered in the decree.

The statute, CL 1948, § 611.2 (Stat Ann § 27.652), which provides the authority for a court to transfer a cause from the law side to the equity side, reads as follows:

"Sec. 2. If at any time it appear that a suit commenced in equity should have been brought as an action on the law side of the court, or if it appear that an action commenced on the law side of the court should have been brought in equity, it shall be forthwith transferred to the proper side, and be there proceeded with, with only such alteration in the pleadings as shall be essential."

In order to determine whether the court erred, it is necessary to determine in what position defendant found himself at the time of the institution of the law action. Unquestionably, he was in the position of a surety.

Suretyship is a contractual relation resulting from an agreement whereby one person, the surety, engages to be answerable for the debt, default, or miscarriage of another, the principal. 50 Am Jur, Suretyship, § 2.

Phillips was faced with the fact that under the terms of the payment bond furnished to the city of Detroit, he was liable for the debts Redford owed persons furnishing labor and materials for the job pursuant to Redford's contract.

It is fundamental that a surety, when required to pay its principal's obligation, is entitled to reimbursement. *Canadian Bank of Commerce* v. *Coumbe*, 47 Mich 358; 50 Am Jur, Suretyship, § 221.

Justice BLACK, writing in *Hack* v. *Concrete Wall Company*, 350 Mich 118, 125, quotes with approval from 5 Pomeroy's Equity Jurisprudence (4th ed), Equitable Remedies (2d ed), § 920, p 5183, as follows:

"Subrogation.—When an obligation is discharged by one not primarily liable for it, but who believes himself to be acting either in performance of a legal duty, or for the protection of a legal right, or at the request of the party ultimately bound, and even in certain other cases, favored by public policy, where none of the above circumstances may be present, the party thus discharging the obligation is entitled in equity to demand, for his reimbursement, and subject to any superior equities, the performance of the original obligation, and the application thereto of all securities and collateral rights held by the creditor. The same equity which seeks to prevent the unearned enrichment of one party, at the expense of another, by actions for reimbursement, contribution, and exoneration, operates here, by creating a relation somewhat analogous to a constructive trust, in favor of the subrogee, or party making the payment, in all legal rights held by the creditor, and the subrogee may proceed to enforce the trust."

In *Comstock* v. *Potter*, 191 Mich 629, Justice STONE, writing for the Court, said (pp 637, 638):

"The right of one surety to call upon his cosurety for contribution, like the right of all the sureties to call upon the principal for indemnity, arises from a principle of equity, growing out of the relations which the parties have assumed towards each other. The equity springs up at the time of entering into that relation, and is fully consummated when the surety is compelled to pay the debt. 6 RCL, Contribution, § 6, p 1042.

"It may be taken as settled that the right to contribution is not confined to the relation of cosurety, but extends to joint contractors, and one who has paid

more than his share of the joint obligation may recover contribution from his cocontractors.   6 RCL, Contribution, § 9, p 1046.

"While assumpsit for money paid by a surety is a modern remedy, yet courts of equity have not been ousted of their jurisdiction in matters of this kind on account of the assumption thereof by the law courts, but their jurisdiction is now considered concurrent; and in many cases, as here, assumpsit does not furnish adequate relief.   6 RCL, Contribution, § 19, p 1059."

It has been said the doctrine of contribution rests upon the maxim that equality is equity.   Equitable jurisdiction still remains and in cases of this type has some important advantages.

In the instant case defendant had a claim against plaintiff upon which he could have founded an action. Defendant had equitable grounds on which to seek the help of equity.   50 Am Jur, Suretyship, § 225, reads in part as follows:

"No principle in equity is more familiar, or more firmly established, than that a surety, after the debt for which he is liable has become due, without paying or being called on to pay it, may file a bill in equity in the nature of a bill *quia timet* to compel the principal debtor to exonerate him from liability by its payment, provided no rights of the creditor are prejudiced thereby."

In *Pratt* v. *Corns*, 214 Mich 390, this Court quoted with approval from *Bathgate* v. *Haskin*, 59 NY 533, 537–539, as follows (pp 396, 397):

" 'But while, as a general principle, courts of equity follow the rules of law in enforcing setoffs, they exercise an original jurisdiction over the subject, and in cases of peculiar equity and under special circumstances will enforce a setoff in cases not within the letter of the statute.   *   *   *

" 'The insolvency of a party against whom a setoff is demanded is often a decisive reason for the interposition of a court of equity.' "

The Court also quoted with approval from *Barnes* v. *McMullins*, 78 Mo 260, 272, as follows (p 396):

" 'When the party has a plain redress at law not merely by pleading but by an original suit, a court of chancery will generally refuse to assume jurisdiction, nor will equity take cognizance of a case or extend its jurisdiction to sustain as a setoff a sum so uncertain as to require a jury to be empanelled to liquidate it. But when the demand sought to be set off is certain and definite, and the insolvency of the adverse party is admitted, the chancellor has jurisdiction to retain the matter and give full and final redress by decreeing a setoff or any other relief consistent and proper in the case.' "

The Court further quoted with approval from *Houston* v. *Maddux*, 179 Ill 377, 390 (53 NE 599), as follows (p 396):

" 'The insolvency of the party, against whom the setoff is claimed, is a ground for the exercise of equitable jurisdiction.' "

Under the circumstances in the instant case, no error was committed by the trial court in transferring the cause to the equity side of the court. The foregoing also clearly answers the second question raised by appellant as to whether the lower court was justified in allowing the defendant equitable setoffs to the claim of the plaintiff, under the circumstances.

Appellant's questions 3 and 4 might have merit only if it is first established the subcontract funds constituted an asset of the receivership. In view of our disposition of the first 2 questions, it is apparent the liability never became an asset of the receivership. The plaintiff was not entitled to the funds. In view of defendant's offer to do equity by paying the

full amount of the subcontract balance into court, there was no error in the chancellor requiring distribution of the funds to those whose labor and materials created the fund. Since statutory provisions for dissolution only involve marshaling and distribution of assets, and since we hold the liability under the subcontract was not an asset of the receiver, no conflict exists with the statutory dissolution and winding-up provisions.*

We have examined the fifth claim of appellant with reference to the admission in the record of the contract between defendant Phillips and the city of Detroit and the related bonds. The best evidence of defendant's contention—that it was in danger of being made to pay twice for the Redford contract—was the surety bond and the contract. Even the provision with reference to the monthly payments under the subcontract was based on the contract between Phillips and the city of Detroit. The trial court did not err in admitting as evidence the contract of Phillips with the city of Detroit and the related bonds.

Plaintiff next contends the trial court erred in holding Redford had failed under its subcontract with the defendant in 2 particulars—the proper completion of the subcontract and filing of the performance bond. An examination of the record discloses testimony from which the trial judge could properly make such finding. The chancellor was present to hear the original testimony. He observed the demeanor of the witnesses on the stand and was in a far better position than we are to determine the truthfulness of the conflicting statements. We cannot say we would have reached a different conclusion, and under these circumstances we do not reverse.

Justice SOURIS would ask that the matter be remanded to determine which of Redford's creditors

---

* See CL 1948, §§ 640.1–640.8 (Stat Ann 1943 Rev §§ 27.2354–27.2361).—REPORTER.

had filed timely statutory notices. The record furnished us, on which we are bound to make a decision, discloses that as to the Hydraulic Concrete Breaking Company claim and the Koenig Coal & Supply Company claim such notices were given.

In the Hydraulic Concrete Breaking Company case there was admitted in evidence a notice dated July 26, 1957, directed to the city of Detroit housing commission, in accordance with the statute, indicating that Hydraulic Concrete Breaking Company was a subcontractor and was still owed $1,779.39 plus interest at 5% per annum, and that it was looking to the bond of Phillips Construction Company for reimbursement.

In the Koenig Coal & Supply Company case there was admitted in evidence a notice dated September 26, 1957, directed to the city of Detroit housing commission indicating that the Koenig Coal & Supply Company furnished materials to the Redford Cement Floor Company; that there was still due for same $7,714.32; that it relied upon the security of the bond required to be given by the general contractor; and that said notice was being furnished pursuant to the provisions of the statute.

No need exists to refer these 2 matters to the trial court for further consideration. As to the remaining creditors, the proofs do not disclose whether they had filed timely statutory notices or instituted proceedings on defendant's bond within the time allowed by statute.*

The decree of the lower court is affirmed as to claims of Hydraulic Concrete Breaking Company and Koenig Coal & Supply Company. The case is remanded for the opening of proofs only as to the other creditors. Defendant shall have costs.

---

* See CL 1948, § 570.101 *et seq.* (Stat Ann 1953 Rev § 26.321 *et seq.*).—REPORTER.

Dethmers, C. J., and Carr, Kelly, and Black, JJ., concurred with Kavanagh, J.

Souris, J. (*dissenting in part*). I concur with Mr. Justice Kavanagh's conclusion that defendant is entitled to indemnification from liability to its subcontractor's creditors, but I cannot join in affirmance of the decree. That decree was based upon a finding by the chancellor that defendant was liable to certain creditors of Redford Cement Floor Company by virtue of a payment bond he had filed pursuant to the provisions of PA 1905, No 187 (CL 1948, § 570.101 *et seq.* [Stat Ann 1953 Rev § 26.321 *et seq.*]), and, for that reason, should be indemnified from such liability before payment of the amount found due from defendant to plaintiff as Redford's receiver.

Section 2 of the act imposes certain requirements upon subcontractors and all others, excepting those furnishing labor, as conditions for invoking the security of the bond required by the act on certain public works projects such as was here involved. It requires that written notice of reliance upon the bond or that the contractor or subcontractor is indebted to them in a specified amount or for specified materials or supplies be filed with the city or governmental unit involved. The notice must be filed within 60 days after completion of the subcontract or after furnishing the last materials or supplies. Section 4 of the act limits prosecutions on the bond to 1 year after completion and acceptance of the project.

The chancellor entered a decree which, after finding defendant indebted to plaintiff in the amount of $15,033.09, required disbursement of over $14,000 to be made to certain of Redford's creditors in full payment of claims arising from its work on the project. The record of proceedings before the chancellor contained in the appendices filed here on appeal, discloses that there was no evidence offered to show

compliance by any of Redford's creditors with the statutory requirements. In other words, the chancellor's decree has the effect of indemnifying defendant against claims which might never arise.

The fact is that while this case was here on appeal defendant was granted leave by this Court to take additional testimony and the case was remanded for that purpose. On remand, the parties stipulated instead for the admission in evidence of certain court records indicating that 2 summary judgments were obtained against, and satisfied by, defendant in the total amount of $10,868.85 in favor of 2 of Redford's major creditors who apparently had filed the statutory notices and had instituted proceedings on the defendant's bond within the time required by statute. Although the statutory notices apparently had been filed before hearing below, I find no evidence thereof in that hearing. Indeed, both suits on the bond were instituted and summary judgments granted while the chancellor had this matter under advisement, and it does not appear that the chancellor was advised thereof.

Under the circumstances, this case should be remanded for the opening of proofs to determine which of Redford's creditors had filed timely statutory notices or had instituted proceedings on defendant's bond within the time allowed by statute. Since defendant's liability is limited only to those of Redford's creditors who have perfected their statutory rights under the bond, indemnification of defendant in this proceeding should be limited to the claims of those creditors.

The decree should be reversed and the case remanded. No costs.

SMITH and EDWARDS, JJ., concurred with SOURIS, J.