**WORTHINGTON CORPORATION, a Delaware corporation, Plaintiff-Appellee,**

v.

**LEASE MANAGEMENT, INC., a Michigan corporation, Defendant-Appellant.**

No. 15848.

United States Court of Appeals
Sixth Circuit.

Oct. 9, 1965.

------

Edward D. Wells, Grand Rapids, Mich., Byron P. Gallagher, Mount Pleasant, Mich., and Cholette, Perkins & Buchanan, Grand Rapids, Mich., of counsel, on brief, for appellant.

Lawrence Zelle, Minneapolis, Minn., Robins, Davis & Lyons, Minneapolis, Minn., of counsel, Schmidt, Smith, Howlett & Halliday, Grand Rapids, Mich., Laurence D. Smith, Grand Rapids, Mich., of counsel, on brief, for appellee.

Before O'SULLIVAN, PHILLIPS and EDWARDS, Circuit Judges.

EDWARDS, Circuit Judge.

This appeal is from a jury verdict and judgment for plaintiff in the amount of $118,777.90.[1] The suit, brought under federal diversity jurisdiction, arose out of an explosion of a generator being installed by plaintiff on the premises of Wolverine Electric Cooperative. The explosion wrecked the generator and killed Lester Lewis, an employee of defendant. Plaintiff claimed (and the jury verdict must be read as agreeing) that defendant Lease Management, Inc.'s, negligence was a proximate cause of the explosion. Defendant Lease Management, Inc., appeals claiming, among other things, that plaintiff was contributorily negligent and that the trial judge committed reversible error by not submitting this issue to the jury.

Wolverine Electric Cooperative is an electric power-producing cooperative which operates a plant at Vestaburg, Michigan. In 1959 it decided to expand its electric power output by installation of a sixth generator and signed a contract with plaintiff Worthington Corporation for purchase and installation of the generator. Worthington started performance of the contract (which placed risk of loss on it until acceptance and payment) and as of November 24, 1959, was still working on the generator, although it was installed and in operation.

The generator was designed to use two types of fuel—natural gas and diesel oil. Wolverine had a contract with a near-by oil and gas field, owned by Rock Oil & Gas Company, for the furnishing of natural gas at a rate more economical to it than diesel oil. The gas came from Rock Oil's Edmore field six miles away via a pipeline owned by Wolverine. Rock Oil's contract required it to furnish gas "dry and free from solids and liquids."

In 1958, after date of Rock Oil's contract with Wolverine, Rock Oil contracted with defendant Lease Management, Inc., to take over management, operation and maintenance of its Edmore field. It appears that under Rock Oil's arrangement with Lease Management, Inc., defendant Lease Management stepped into Rock Oil's shoes in all respects as far as this litigation is concerned, since Rock Oil was dismissed on motion as a party defendant and no appeal is brought pertaining to that dismissal.

On November 24, 1959, the chief operator of the Vestaburg plant for Wolverine, Mr. Myron Wood, noticed that the new generator being installed by plaintiff Worthington was losing power. He switched the generator over from gas to oil fuel and drove to the Edmore field to find out what was wrong. Previously

------

[1]. Defendant Lease Management also appeals from the grant of a motion for new trial following an earlier trial of this case wherein defendant secured a jury verdict. At the conclusion of the first trial District Judge Picard (now deceased) granted plaintiff's motion for a new trial on the ground that his charge had misstated the doctrine of Respondeat superior under which plaintiff sought to hold Lease Management for the negligence of its employee Lewis. We have reviewed the charge as given by Judge Picard and his opinion on the motion and hold that his grant of the motion for new trial was well within his judicial discretion. Rule 59, Fed. R.Civ.P. We have dealt with this issue separately so that the body of this opinion may deal principally with the issues of the second trial.

Rock Oil had told Wolverine's personnel to contact a Mr. Lewis at the field about any problems, and Wood did so. Lester Lewis, originally a Rock Oil employee, had been placed on defendant Lease Management's payroll when the latter took over the Edmore operation. Lewis checked and determined there was no trouble at the field, whereupon Wood drove back to the Wolverine plant, followed by Lewis.

At trial of this case, Wood testified that he and Lewis decided to take the "regulator" off the gas pipeline at a point located on the outside wall of the plant. The regulator was located in close proximity to the air intake for the Worthington generator which was still in operation. He testified that Lewis had brought a tool box with him to the plant and that he and Lewis removed the regulator, disassembled and cleaned it out, and reassembled it.

Wood also testified:

"Q (By Mr. Zelle) What was done after the regulator had been taken apart?

"A It was reassembled.

"Q Who reassembled it?

"A Mr. Lewis and I.

"Q What was done next?

"A We went out to blow out the line.

"Q You went to blow out the line?

"A That is right."

In any event, Wood then went to a "gas house" 60 feet away where the pipeline meter and valves were located while Lewis stood near the place where the regulator had been removed, leaving a 12-inch open gap in the pipeline. Wood's testimony continued:

"Q (By Mr. Zelle) * * * What next happened?

"A I opened the valve and closed it.

"Q What valve is that?

"A This was the valve that was in the three-inch line. I opened it and closed it. I opened it and at that time the dirt blew out and a second later the thing blew up.

"Q What dirt blew out?

"A How?

"Q What dirt are you talking about? You mean the dirt in the line?

"A The dirt came out of the line. There was a cloud of dirt came out of this line. The first time I opened it we got an awful charge of dirt out of it, and the second time I opened it, we still got some dirt out of it, but not as much and just an instant after that things happened."

The "things" which happened were the explosion of the generator which killed Lewis and occasioned the damage to the generator for which this suit was filed.

At trial of this case an engineer employed by plaintiff Worthington (called as a witness by plaintiff) testified in effect that the explosion had occurred because the removal of the regulator had left an opening in the gas pipeline close to the air intake for the Worthington generator. The air intake (located on the outside of the building within three feet of the regulator on the pipeline) drew air at the rate of 10,000 cu. ft. per minute into the engine cylinder. When Wood turned the valve on for the second time, gas coming out of the opening at a rate of 7,400 cu. ft. per minute was mixed with air, sucked into the air intake and into the engine cylinder and ignited by the exhaust flame, resulting in the explosion.

Both parties conceded at trial (and before us) that the generator—built to consume gas in great quantities—fell into the "dangerous instrumentality" category.

Defendant's testimony at trial tended to establish that the regulator had previously been removed several times to blow out the gas line, and that plaintiff Worthington knew, or should have known, of its possibility. Defendant's testimony also tended to establish that the design and layout of the Worthington

generator was done by an architectural firm working with plaintiff Worthington.

■ Under Michigan law, which, of course, we apply here, defendant was required to plead and prove contributory negligence as an affirmative defense. Michigan Court Rules No. 111.7. But likewise under Michigan law, contributory negligence if affirmatively proven, bars plaintiff's recovery, and, ordinarily, is held to be an issue for jury consideration. McKinney v. Yelavich, 352 Mich. 687, 90 N.W.2d 883 (1958); Serratoni v. Chesapeake & O. Ry. Co., 333 F.2d 621 (C.A. 6, 1964); Hileman v. Northwest Engineering Co., 346 F.2d 668 (C.A. 6, 1965).

■ Indeed, exceptions to jury consideration are rare. In the much cited Van Steinburg case, Justice Cooley stated the basic Michigan rule as to them. "The case, however, must be a very clear one which would justify the court in taking upon itself this responsibility." Detroit & Milwaukee Railroad Co. v. Van Steinburg, 17 Mich. 99, 120 (1868). While this was said about a verdict directed against a plaintiff, it also applies to an instruction against a defendant on the issue of contributory negligence. See Hileman v. Northwest Engineering Co., supra. And, of course, on an instructed verdict on this issue, we review the evidence applicable to it from the point of view favorable to the party (here the defendant) who was deprived of a jury decision. Price v. Firestone Tire and Rubber Company, 321 F.2d 725 (C.A. 6, 1963); see also, Ware v. Nelson, 351 Mich. 390, 88 N.W.2d 524 (1958).

■ A careful review of this record convinces us that there was testimony from which the jury could have found or inferred 1) that plaintiff Worthington was responsible for the design and layout of the generator which located its air intake near the removable regulator, 2) that plaintiff knew, or should have known, of the possibility that the regulator might be removed in order to blow out the line while the plant was operat-

ing, and 3) that such location of the air intake of an acknowledged dangerous instrumentality was negligence which contributed as a proximate cause of this explosion.

In this vigorously disputed and closely balanced negligence contest, the failure to instruct that a finding that plaintiff was guilty of negligence which contributed as a proximate cause to the happening of the accident would require a verdict for defendant was in our judgment error which could easily have affected the result.

While what we have said clearly requires reversal for new trial, some of the other issues in this appeal may again be presented and some comment on them may be helpful.

In the background of this case—and adding to its complexity at both trials—has been a very interesting document. During the course of both trials defendant sought to introduce a contract which it claimed had been executed between plaintiff Worthington, its insurance carrier, and Wolverine Electric Cooperative and its insurance carrier. By the terms of this instrument Wolverine's insurance carrier and Worthington's insurance carrier in effect split an agreed estimate of actual damages to the generator of $102,570.66. This figure was reduced by $5,000 deductible charged to Worthington and it omitted any profit Worthington might have contemplated on the generator. Each insurer paid Worthington $48,785.30.

The contract further provided for a release to Wolverine and for a covenant not to sue Wolverine executed by Worthington. It further provided that any recovery effected by Worthington would be divided between Worthington's insurance carrier and Wolverine's insurance carrier:

"Any settlement achieved or recovery made shall first be subject to the payment of attorneys' fees and costs (subject to Paragraph VII), and shall thereafter be divided pro rata between WORTHINGTON,

PROTECTION and ATLAS, with WORTHINGTON to receive 18.38% of the net recovery as hereinafter defined, and PROTECTION and ATLAS each to receive 40.81% of the net recovery as hereinafter defined."

By this arrangement Wolverine, at least a possible joint tortfeasor, sought (successfully at the second trial) to step securely into the shoes of plaintiff Worthington without the jury knowing it.

But Wolverine's agent, Wood, was both the principal surviving active agent in the events which produced this explosion and the sole surviving eye witness at the trial. This is quite a blindfold for a jury to wear where it is asked to determine a negligence case at least in large part by judging the credibility of this witness.

■ Doubtless with these considerations in mind, defendant moved at the second trial to add Wolverine as a party defendant under Michigan Court Rule 204 (G.C.R.1963, 204) which for the first time allowed one joint tortfeasor to implead another in a suit by an injured party against the movant. The District Judge denied this motion, doubtless in reliance upon the well-reasoned opinion in Buckner v. Foster, 105 F.Supp. 279 (E.D.Mich.1952), aff'd on other grounds, 203 F.2d 527 (C.A.6, 1953).

Whatever the merits of that ruling when made, the underpinning of Buckner has now been removed by decision of the Michigan Supreme Court in Husted v. Consumers Power Company, 376 Mich. 41, 135 N.W.2d 370 (1965), which clearly construes Court Rule 204 as procedural rather than substantive in its effect.

"Some preliminary observations are in order. The first is made by reference to specific comment Honigman & Hawkins have appended to the third-party rule. They say of the rule, and we agree (1 Honigman and Hawkins, Mich.Ct.Rules Annotated, p. 508):

"'Rule 204 does not create substantive rights. The substantive basis for defendant's claim against the third-party defendant must be found elsewhere before the rule becomes operative. That basis may be found in principles of indemnity, subrogation, contribution, warranty, or other substantive right.'

"The next is that the substantive rights and liabilities of all present parties are determinable properly according to the law as it stood when the causes alleged by the two plaintiffs accrued in 1959. At that time, and quite aside from the remedies equity then provided (and yet provides despite the 'merger' of law and equity) for reimbursement, subrogation, exoneration and indemnity (see authorities considered in Hack v. Concrete Wall Co., 350 Mich. 118 at 123, 124, 125, 126, 85 N.W.2d 109; Hack Inv. Co. v. Concrete Wall Co., 356 Mich. 416, 421–422, 423, 97 N.W.2d 106, and Ellis v. Phillips, 363 Mich. 587, 110 N.W.2d 772), the only remedy available to a joint tortfeasor against his brother in guilt was by chancery action for contribution taken in pursuance of the act of 1941 (C.L.1948, § 691.561 et seq. [Stat.Ann.1959 Cum.Supp. § 27.1683 (1)]). The act of 1941 was changed in minor degree (to accommodate the new procedure only and not to change the substance) and re-enacted as section 2925 of the Revised Judicature Act of 1961 (C.L.S.1961, § 600.2925 [Stat.Ann.1962 Rev. § 27A.2925])." Husted v. Consumers Power Co., supra at 47, 135 N.W.2d at 372. (Footnote omitted.)

Thus, contrary to the reasoning of Buckner v. Foster, supra, the Michigan Supreme Court has plainly held its new rule to be procedural and pointed to the statutory right of contribution as the substantive right. Under this interpretation it seems clear that defendant Lease

Management's motion to implead Wolverine should have been granted, and, if renewed on retrial, now must be. Rule 14, Fed.R.Civ.P.

■ Appellant also claims reversible error in the District Judge's failure to bar witness Wood's testimony concerning certain alleged statements of the deceased, Lewis, when objection was made based on Michigan Stat.Ann. § 27A.2160(3). This statute bars testimony from an "opposite party" about "matters which, if true, must have been equally within the knowledge of a deceased officer or agent of the corporation * * *."

Since we have determined to reverse for new trial on other grounds, we see no need to decide this matter on the somewhat inadequate factual record now presented. The new trial is certain to produce a quite different record as to some of the facts necessary to bring this statute into operation. It is appropriate, however, to observe that this circuit has held a state Dead Man's Statute to bar such conversations in a diversity case tried in federal court on appropriate facts pertaining to the witness and to the deceased. Appolonio v. Baxter, 217 F.2d 267 (C.A.6, 1954). See also Wright v. Wilson, 154 F.2d 616, 170 A.L.R. 1237 (C.A.3, 1946), cert. denied, 329 U.S. 743, 67 S.Ct. 50, 91 L.Ed. 640 (1946).[2]

■ Appellant also contends that it should have been entitled to an instruction to the jury to the effect that its deceased employee, Lewis, was presumed to be free from negligence.

Presumptions are generally regarded as substantive in nature, and hence, in a diversity case, are governed by state law. 2B Barron and Holtzoff, Federal Practice and Procedure, § 964 (Wright ed. 1961); Dick v. New York Life Insurance Co., 359 U.S. 437, 79 S.Ct. 921, 3 L.Ed.2d 935 (1959).[3]

■ The fundamental statement of the applicable presumption under Michigan law is set forth in Gillett v. Michigan United Traction Co., 205 Mich. 410, 171 N.W. 536:

"When direct, positive, and credible rebutting evidence is introduced, the presumption ceases to operate; but when circumstantial evidence of doubtful value is the only rebutting evidence offered, the question should be submitted to the jury, and, if they decide that the circumstantial evidence should be disregarded, the presumption is still sufficient to establish plaintiff's case as to the exercise of proper care by the deceased. * * *" Gillett v. Michigan United Traction Co., supra at 415–416, 171 N.W. at 558.

On the factual record which we have set forth, there was certainly evidence

**2.** This case discusses at length the question (not briefed before us or discussed in Appolonio) as to whether Rule 43(a) of the Federal Rules of Civil Procedure, because it favors the admissibility of evidence, should be read in diversity cases as rendering state Dead Man's Statutes inapplicable. Judge Goodrich's opinion (which reached a negative answer "without enthusiasm") apparently represents the current weight of authority in the federal circuits. Wright v. Wilson, supra, 3rd Circuit; Appolonio v. Baxter, supra, 6th Circuit; Duling v. Markun, 231 F. 2d 833 (C.A.7, 1956), cert. denied, 352 U.S. 870, 77 S.Ct. 96, 1 L.Ed.2d 76 (1956); Potlatch Oil & Refining Co. v. Ohio Oil Co., 199 F.2d 766 (C.A.9, 1952), cert. denied, 345 U.S. 926, 73 S.Ct. 786, 97 L.Ed. 1357 (1953). But see Hope v.

Hearst Consolidated Publications, Inc., 294 F.2d 681, 95 A.L.R.2d 213 (C.A.2, 1961), cert. denied, 368 U.S. 956, 82 S.Ct. 399, 7 L.Ed.2d 388 (1962); Monarch Insurance Co. of Ohio v. Spach, 281 F.2d 401 (C.A.5, 1960); Croom v. Fiedler, 341 F.2d 909 (C.A.6, 1965).

**3.** In this case arising from state law which also involved a presumption, Mr. Chief Justice Warren noted but did not decide the question of "[W]hether it is proper to apply a state or federal test of sufficiency of the evidence to support a jury verdict where federal jurisdiction is rested on diversity of citizenship. * * *" Dick v. New York Life Ins. Co., 359 U.S. 437, 444–445, 79 S.Ct. 921, 926, 3 L.Ed. 2d 935. In this case (as in the instant case) both parties assumed that the state standard applied.

from which the jury could have found Lewis guilty of negligence. But such a finding would, of course, hinge on whether he knew or should have known of the existence of the air intake for the Worthington generator and what its suction of a quantity of gas would do. While the matter is by no means undisputed (See Steger v. Blanchard, 353 Mich. 140, 90 N.W.2d 891 (1958); Weller v. Mancha, 353 Mich. 189, 91 N.W.2d 352 (1958); Cf: Tien v. Barkel, 351 Mich. 276, 88 N.W.2d 552 (1958); Britten v. Updyke, 357 Mich. 466, 98 N.W.2d 660 (1959)), we conclude that the evidence herein relied upon to rebut the presumption includes circumstantial and debatable evidence, and that the instruction on the presumption of due care should have been given. We cannot, of course, predict what the factual record of a new trial may bring.

We find no other reversible error.

Reversed for new trial.

PHILLIPS, Circuit Judge (concurring).

I concur in the well-reasoned opinion which has been prepared by Judge Edwards reversing and remanding this case for a new trial. On the question of the possible application of the Michigan Dead Man's Statute, I concur in the view that, under the rule now in effect in this Circuit, Rule 43(a) of the Federal Rules of Civil Procedure does not foreclose the application of the Michigan statute in a diversity case tried in Michigan under facts calling for such application. We have chosen to follow Appolonio v. Baxter, 217 F.2d 267 (C.A.6) in the present case under the doctrine of stare decisis. This appears to be the present majority rule, although there is persuasive authority to the contrary. (See cases cited in second footnote to the opinion of Judge Edwards.) Quite obviously the holding in the present case will not preclude this court under appropriate facts at a future date from reconsidering this rule in the light of subsequent developments in the law on this subject.

Whether or not the facts of this case will call for application of the Dead Man's Statute is a matter to be determined by the district court from the evidence developed at the new trial.

O'SULLIVAN, Circuit Judge (concurring).

I concur in the opinions of Judges Edwards and Phillips. I wish to make clear however my understanding that our decision holds that the involved Michigan Statute M.S.A. § 27A.2160(3) is applicable to diversity actions tried in Michigan.