HACK v. CONCRETE WALL COMPANY.

EQUITY — TRANSFER OF CAUSES — INDEMNITY — EQUALLY DIVIDED COURT.

Judgment for defendant after transfer to law side of court of equity suit by plaintiffs for indemnity for amount of judgment which had been obtained against all parties and paid by plaintiffs, on ground that defendant was primarily liable for the tort upon which the paid judgment had been based, incident to which plaintiff sought sequestration as to appeal bond in the law case, is affirmed by an equally divided court (CL 1948, § 611.2).

Appeal from Wayne; O'Hara (Chester P.), J. Submitted January 16, 1957. (Docket No. 89, Calendar No. 47,077.) Decided October 7, 1957. Rehearing denied November 26, 1957.

Bill by Leonard Hack, Morton Hack and Nathan Hack, copartners doing business as Hack Investment Company, and Honey Homes, Inc., a Michigan corporation, against Concrete Wall Company, a Michigan corporation, to impress full liability on it as subcontractor responsible for injuries to building adjoining their operations, for which plaintiffs have responded in damages and paid judgment against them and defendant. On motion to dismiss,

REFERENCES FOR POINTS IN HEADNOTES
3 Am Jur, Appeal and Error §§ 1160, 1164.

trial court afforded alternative of transferring cause to law side of calendar. Judgment for defendant. Plaintiff appeals. Affirmed by an equally divided court.

*Robbins, Wechsler & Lebenbom* (*Arthur L. Robbins,* of counsel), for plaintiffs.

*Alan N. Brown,* for defendant.

Plaintiffs' bill was filed in the Wayne circuit March 10, 1955. Its purport and purpose will appear in the body of our opinion. Defendant moved to dismiss on ground that the bill alleged a cause not cognizable in equity in that plaintiffs sought—in presently considered circumstances—full reimbursement distinguished from proportionate contribution. In connection with its motion defendant conceded plaintiffs' right to seek contribution in equity and offered to pay accordingly. Upon hearing of the motion, the chancellor ruled (June 29, 1955) that plaintiffs must either (a) amend their bill in such manner as to reduce to proportioned contribution the amount claimed by them, or (b) present an order transferring the case to the law side of the court, or (c) submit to dismissal of the bill as moved. Plaintiffs suffered alternative (b) above and the case in consequence was transferred to law where it was tried to the court without a jury. Following such trial, and on January 30, 1956, judgment was entered disallowing plaintiffs any amount. From such judgment plaintiffs appeal.

BLACK, J. (*after stating the facts, for reversal*). This case was originally assigned to a brother Justice. It was reassigned to the writer July 1, 1957.

The decisive question is whether plaintiff's bill of complaint states an appropriate case for consider-

ation of equity. If it does, and for presently-stated reasons we so hold, this record of 333 printed pages proves again that disposition of chancery cases on motion to dismiss is a practice to be avoided save only when it is clear on face of the bill that equity is without jurisdiction to grant any relief (shaped by the hand of the chancellor rather than dictated by the prayer; *Herpolsheimer* v. *A. B. Herpolsheimer Realty Company,* 344 Mich 657; *Carlson* v. *Williams,* 348 Mich 165) on account of the charging part thereof. Here the occasion for determining whether defendant should fully reimburse plaintiffs, or should pay them some lesser contributory amount, or should pay them nothing, will not arrive until the case made by the bill is duly presented. Indubitably, that occasion did not arise on presentation of this motion to dismiss.

The bill now scrutinized alleges that plaintiff Hack Investment Company, plaintiff Honey Homes, Inc., and defendant Concrete Wall Company were held to respond in damages at the suit of one Evelyn Livingston Smith,* owner of a building which, on account of negligence of defendant for which plaintiffs with defendant became responsible to Miss Smith, was caused to collapse. It alleges that a judgment entered against the present parties in favor of Miss Smith, aggregating $17,058.12 in amount, was paid under compulsion of legal process by the present plaintiffs; that "the liability of these plaintiffs on said judgment is merely secondary, whereas the liability of the defendant is primary, and, accordingly, it is liable to these plaintiffs for indemnity;" that the said defendant "is the wrongdoer who caused the damages for which the judgment was rendered and is, therefore liable for indemnity to these plaintiffs;" that "in order to secure indemnity from de-

---

* Miss Smith's suit against the present parties is termed "the law case" in record and briefs before us.

fendant, it is necessary that this court sequester a bond filed by Concrete Wall Company with this court in said law case, in the amount of $15,000, the purpose of said bond being to avoid collection of the judgment pending an appeal by Concrete Wall Company to the Supreme Court," and that such plaintiffs are entitled to be subrogated to all "rights of said Evelyn Livingston Smith under said bond" and the judgment so paid. The bill prays sequestration of the mentioned bond through injunctive process; equitable subrogation thereto; decree "for full indemnity against said defendant and in favor of these plaintiffs for all sums paid, laid out and expended by these plaintiffs on account of said judgment at law," and general relief.

Defendant moved in due time to dismiss the bill on ground that the bill "purports to be a suit for indemnity on the theory that defendant is primarily liable for its tort and plaintiffs are secondarily liable" and, "If this be true," that "plaintiffs have an adequate remedy at law and not in chancery."

Disposition of the bill, and of the motion to dismiss, was made this way (quoting from the chancellor's opinion filed June 29, 1955):

"It is not too clear in this voluminous file of the law case as to just what negligence could be attributed to the Hack Investment Company and Honey Homes, Inc. It appears to be a situation where Hack Investment Company, as the agent of the owner of the property, was held liable more or less on the grounds of *respondeat superior,* and the Honey Homes, Inc., was held liable on a similar basis plus possibly the activities of its president, Mr. Honeyman. This court does not have available the entire proceedings in that case. It may be possible that there was some active negligence insofar as Mr. Honeyman and his corporation were concerned, but that is merely speculation on the part of this court.

All of that can be determined and will be determined upon the trial of this cause.

"Many of the authorities relied upon by plaintiffs in their brief have to do with principal and surety and hence have no application to the question here presented. The statute * * * (CL 1948, § 691.561 *et seq.* [Stat Ann 1955 Cum Supp § 27.1683(1) *et seq.*]), provides for an action in chancery for contribution as between defendants who have been found to be jointly liable for bodily injury, death or property damage, where 1 or more of the defendants have paid the entire judgment. As stated, *supra,* this defendant is agreeable to contribution but plaintiffs are not. There is no question in my mind but what plaintiffs are entitled to their day in court on the question of indemnity, but I hold that chancery is not the proper forum. The case should be tried on the law side of the court where either party may have its rights determined by a jury and where the question of negligence and concurrent negligence may be determined as between the parties to this action.

"Consequently plaintiffs may either proceed on the equity side of the court for contribution by amending their bill of complaint within 15 days or may present an order transferring this cause to the law side of the court* within the same time limit. In the latter event, the parties shall, within the time specified by the rules of this court, file their respective pleadings on the law side and make demand for jury if they so desire. In the event that neither of these procedures is agreeable to the plaintiffs, the cause will be dismissed upon an order presented after the expiration of the 15 days."

It will be noted that the chancellor undertook to appraise plaintiffs' bill by resort to the "file of the law case." By means of post-argument correspondence between counsel and our clerk, initiated by the writer and concluded after preparation of an earlier

---

* See CL 1948, § 611.2 (Stat Ann § 27.652).—Reporter.

draft of opinion here, we learn that the parties agreed before the chancellor—off the record—that the law case record should be considered a part of the bill for purposes of the motion to dismiss. Accepting the bill according to such stipulation, we find ourselves in agreement with the chancellor's conclusion that "It is not too clear  *  *  *  as to just what negligence could be attributed to the Hack Investment Company and Honey Homes, Inc.," and that such uncertainty should be resolved by testimonial trial. The conclusion patently called for trial of the chancery case, rather than dismissal or transfer thereof to law, and it unsettled then as it does now defendant's motion to dismiss for reasons summarized in syllabus No. 4 of *Wyckoff* v. *Victor Sewing Machine Co.*, 43 Mich 309.

In the opinion from which we have quoted the chancellor considered rules given in *Township of Hart* v. *Noret*, 191 Mich 427 (LRA1916F, 83); *Village of Portland* v. *Citizens Telephone Co.*, 206 Mich 632; *Bradley* v. *Burdick Hotel Co.*, 306 Mich 600; *Indemnity Insurance Company of North America* v. *Otis Elevator Co.*, 315 Mich 393 (171 ALR 266), and a portion of the text* of Cooley on Torts. He turned next to *Robinson* v. *Bennett*, 50 Mich 560, and, having observed that *Robinson* "has never been followed," declined to follow it. As to *Robinson*, we apprehend that it is more accurate to say that the case has never been challenged or overruled and that it fully

---

* Mr. Justice COOLEY, having observed that the law "cannot recognize equities as springing from a wrong in favor of one concerned in committing it," went on to say:

"But there are some exceptions to the general rule which rest upon reasons at least as forcible as those which support the rule itself. They are of cases where, although the law holds all the parties liable as wrongdoers to the injured party, yet as between themselves some of them may not be wrongdoers at all, and their equity to require the others to respond for all the damages may be complete. There are many such cases where the wrongs are unintentional, or where the party, by reason of some relation, is made chargeable with the conduct of others." (1 Cooley on Torts [4th ed], § 89, p 292.)

sustains (as do *Comstock* v. *Potter,* 191 Mich 629; and *Comstock* v. *Corbin,* 191 Mich 639) equity's broadly exercised jurisdiction where the related remedies of reimbursement, exoneration, contribution, or subrogation are properly invoked. Actually, and when a party seeks to be reimbursed to the amount of his loss, by another party whose liability is prior to or primary over his own, the remedy in equity is concurrent with and usually provides advantages over that provided at law. The present appeal for auxiliary relief in the way of sequestration is an example of the latter.

Whether the suit be termed one for reimbursement or otherwise, the reasons underlying equity's jurisdiction are the same. Pomeroy says (5 Pomeroy's Equity Jurisprudence [4th ed], Equitable Remedies [2d ed], § 911, pp 5162, 5163):

"In general.—Under the early jurisdiction at law, in the absence of express contracts for indemnity or exoneration, it was left to the caprice of the creditor to determine upon which of several parties bound for the same obligation the burden should fall, the loss being left wherever the creditor, by his choice of a defendant, might put it. This inadequacy of remedy on the part of the victim, and consequent failure of justice, became, however, a ground for the interposition of equity, and the proper readjustment of such burdens was, at an early day, an important field of equitable jurisdiction. The efforts of courts of equity have been directed toward placing the loss, as far as possible, on the parties ultimately liable,— or as between 2 or more not ultimately liable, on the party whose liability is prior—and, as between parties equally liable, toward distributing the loss equally among them. The former result is reached by an action for reimbursement, and the latter by an action for contribution. Both of these results are assisted by the action for exoneration, and the remedial process of subrogation."

The text just quoted makes up the lead paragraph of chapter headed "Suits for reimbursement, contribution, exoneration, and subrogation." Section 920 (p 5183) in the chapter pursues our search to fruitful end. We quote:

"Subrogation.—When an obligation is discharged by one not primarily liable for it, but who believes himself to be acting either in performance of a legal duty, or for the protection of a legal right, or at the request of the party ultimately bound, and even in certain other cases, favored by public policy, where none of the above circumstances may be present, the party thus discharging the obligation is entitled in equity to demand, for his reimbursement, and subject to any superior equities, the performance of the original obligation, and the application thereto of all securities and collateral rights held by the creditor. The same equity which seeks to prevent the unearned enrichment of one party at the expense of another, by actions for reimbursement, contribution, and exoneration, operates here, by creating a relation somewhat analogous to a constructive trust, in favor of the subrogee, or party making the payment, in all legal rights held by the creditor, and the subrogee may proceed to enforce the trust."

It is clear, foregoing premises and principles considered, that the present bill is founded on theory that those who are vicariously liable to a third person are, on retirement of the adjudged obligation, entitled to reimbursement from the pockets of the immediate miscreant (*Cf.*, Restatement, Restitution, §§ 87, 88, and that a bill so couched is not subject to dismissal on ground either that plaintiff has failed to state a case under the statute (CL 1948, § 691.564) or that the remedy at law is adequate.* True,

---

* The bill in no sense alleges or presents a statutory cause for contribution among joint tort-feasors and, under foregoing authority, requires no amendment to confer jurisdiction. Defendant, in its motion to dismiss, rightfully noted that the bill was not planted on the theory of joint tort-feasorship.

equity may find on testimonial test of such bill that her orator is entitled to partial reimbursement only or, for that matter, that the equities of the unfolding case call for complete denial of relief to him. Such considerations do not, however, affect the invoked jurisdiction or prove adequacy of legal remedy. Indeed, and for apt illustration, we need not look outside this record. When the case was still entitled in chancery defendant conceded plaintiffs' right to equitable relief limited to a contributory share of the amount theretofore paid to satisfy Miss Smith. When the case was transferred to law, however, defendant insisted plaintiffs should recover nothing. The trial judge, agreeing with defendant in such regard, furnishes fair proof that plaintiffs most inequitably were tossed out of chancery and into law solely because, as in Oliver Twist, they asked for "more" oatmeal than the master had ladled out.

It is no answer to our stated holding, and assuredly not right, to say that these plaintiffs have received the same judicial determination—in the law court below—they would have received had the merits of their bill and proofs been tested in equity. In the first place, and this we repeat, plaintiffs have so far lost, by this misfortunate order for transfer to law, that which defendant originally proffered and equity undoubtedly would have provided at very least, that is, contribution of a "pro-rata share." In the second place—and this we affirm with emphasis—, the right of appeal to equity by proper bill, and the right of review de novo of an equity case, are just as sacred as is the right of trial by jury. Equity looks specially to the intent, and seeks evidence with respect thereto. Law limits its inquisition to legalistic forms and rights. The acoustically sensitive walls of equity's cathedral are tuned to benign sounds law cannot hear, and witnesses regularly speak to chancellors of circumstances deemed irrelevant in com-

mon-law courts. She imputes intention to fulfill express or implied obligations; whereas the same obligations may not be enforceable elsewhere for sometimes primitive legal reasons. Her chancellors seek to provide and insure fair dealing when the forms of law are sometimes supine and lifeless. Though equity customarily follows the law, it is not so "slavishly nor always." (Cardozo, C. J., in *Graf v. Hope Building Corp.,* 254 NY 1, 9 [171 NE 884, 70 ALR 984].)* "Generally, in all matters in which there is any conflict or variance between the rules of equity and the rules of the common law with reference to the same matter, the rules of equity shall prevail." (1 Pomeroy's Equity Jurisprudence [5th ed], p xxiv). Equity shall not be eroded, so long as her defenders stand vigilant (Pomeroy, same page). Withal, these plaintiffs have properly and vainly insisted upon determination of their asserted rights in equity, and having duly brought the question to us for review, this Court is bound to uphold the bill they have filed as against defendant's said motion.

The only remaining question of present interest is advanced this way by defendant:

---

* This maxim, "equity follows the law", unlike equity's remaining maxims, is limited in its application and operates within very narrow limits. Adverting to Pomeroy (1 Pomeroy's Equity Jurisprudence [4th ed], § 427, pp 796, 797):

"The maxim is, in truth, operative only within a very narrow range; to raise it to the position of a general principle would be a palpable error. Throughout the great mass of its jurisprudence, equity, instead of following the law, either ignores or openly disregards and opposes the law. As was shown in that portion of the introductory chapter which deals with the nature of equity, one large division of the equity jurisprudence lies completely outside of the law; it is additional to the law; and while it leaves the law concerning the same subject matter in full force and efficacy, its doctrines and rules are constructed without any reference to the corresponding doctrines and rules of the law. Another division of equity jurisprudence is directly opposed to the law which applies to the same subject matter; its doctrines and rules are so contrary to those of the law, that when they are put into operation the analogous legal doctrines and rules are displaced and nullified."

"In the case at bar, it appears that the plaintiffs must elect—and did elect to sue under the theory of principal and agent at law for indemnity and took their chance of being able to prove that the Smith building collapsed solely and proximately from defendant's negligence, and that plaintiffs were free from contributory or concurrent negligence; they could have sued in chancery under the tort-feasors contributions statute* for their pro-rata share. Having made the election, they should be barred from another choice at this time."

In retrospect it does appear that plaintiffs' counsel made a mistake when the chancellor's 3-pronged directive of June 29th was issued. He might well have said to the chancellor—"You have no right to enter such an order on motion to dismiss; if you think the bill does not state a case, go ahead and dismiss it because I can then appeal of right." However that may be, we do not agree with defense counsel that a binding election was made by plaintiffs when the order for transfer to law was entered. An election made under a coercive and fully cocked order of court is no election at all.† This is especially so when the order is erroneous, is not reviewable of right, and is reviewable of right only when judgment or decree is ultimately entered.

---

* CL 1948, § 691.561 *et seq.* (Stat Ann 1955 Cum Supp § 27.1683 [1] *et seq.*).—REPORTER.

† For rules determinative of irreversible election as errantly claimed by defendant, see *Hansen* v. *Pere Marquette R. Co.*, 267 Mich 224; followed recently in *Viaene* v. *Mikel*, 349 Mich 533. These plaintiffs were not obligated—so far as equity is concerned—to make a perilous choice between "all or nothing" reimbursement and a partial contribution. Courts of equity were specially set up to provide a forum where such games of chance are eliminated and justice is done according to maxim. In this instance plaintiffs alleged facts on which equity was fully empowered to grant full or partial reimbursement, or none at all, and the chancellor should have proceeded accordingly. It follows that the doctrine of election as invoked by defendant has no application and that plaintiffs in fact were never possessed of "2 or more available remedies between which" they had "a right to elect." (Quotations from *Hansen, supra,* p 227.)

Mr. Justice KELLY, referring to the ruling below of June 29th, asserts without qualification that "Plaintiffs could have appealed the chancellor's decision." He proffers no supporting authority and, to employ a professionally familiar expression, "just says it." Since defendant so contends (in brief submitted on post-argument request of this Court), we assume our Brother intends to say that plaintiffs could have appealed of right. The point being vital to the case as well as one of general concern, we propose to explore it lest the profession conclude that a new vigilance, appellatewise, is in order.

The fact is that an order for transfer from equity to law or law to equity is properly reviewable by application and grant of leave in nature of mandamus (*Commissioner of Insurance* v. *Lapeer Circuit Judge*, 302 Mich 614). This of necessity must be so since an order of such nature is purely interlocutory and involves no final adjudication. It follows that the chancellor's ruling of June 29th was reviewable, not of right but solely on leave granted, and that it is presently reviewable regardless of plaintiffs' omission of application for leave to review in July of 1955. The situation is thus the same as if plaintiffs had unsuccessfully applied for leave at the time. See *Great Lakes Realty Corporation* v. *Peters*, 336 Mich 325.

We might reflect a bit on the portents of any suggestion that plaintiffs' failure to review or attempt review of the ruling of June 29th bars present consideration of their claim that equity should determine this pleaded—and once partly conceded—right of reimbursement. The veriest hint—attested by majority vote here—that failure to review or attempt review of an interlocutory and nonfinal order might be held a waiver of later review thereof—when ultimate appeal of right is made—automatically recalls Mr. Justice FELLOWS' observation in *Anway* v.

*Grand Rapids Railway Co.*, 211 Mich 592, 595 (12 ALR 26):

"Before this Court, with its membership of eight, takes up the work of advising three million people and before the legislature is called upon to increase the membership of this Court so as to efficiently conduct this work, it is well that this Court pause long enough to consider, and consider fully, whether the act (PA 1919, No 150)* calls upon us to perform any duties prescribed by the Constitution or to exercise any power therein conferred."

Is it not fair to say, such hint of waiver having been made, that veritable gusts of additional applications for leave to appeal would descend upon us? Are we unaware that the mere reading of such additional quantities of applications—done properly of course—would require additional membership here? No lawyer, rightfully mindful of his client's rights, would neglect in such case to apply for review of every order and every ruling made against him between filing of bill or declaration and entry of judgment or decree. We in turn would enter new fields of doubt in effort to determine what is before us and what is not. Firmly, then, we attest support of this proposition: That any interim order—which is immediately reviewable "by certiorari, mandamus or other discretionary writ" (Court Rule No 60, § 1 [1945])—is reviewable of right by the aggrieved party if and when he appeals from ultimate judgment or decree and has not previously sought and received review of such order by application and grant of leave.

We hold, then, that plaintiffs' bill with included law case record stated and now states a case cog-

---

* The act under discussion was subsequently repealed. The provisions recommended by the national conference of commissioners on uniform State laws were adopted by PA 1929; No 36 (CL 1948, § 691.501 *et seq.* [Stat Ann § 27.501 *et seq.*]).—REPORTER.

nizable by equity; that the action should not have been transferred to and attemptedly tried at law; that plaintiffs were entitled on filing of their bill to process impounding (on theory of subrogation) the proceeds or effective worth of defendant's bond to Smith in the action at law (there being no showing of reason in this record for refusal of such temporary process), and that defendant should have been held to answer said bill.

The judgment appealed from should be set aside and the case should be returned to equity for entry of order denying defendant's said motion to dismiss. Plaintiffs should recover costs of this appeal. All costs in circuit should abide final decree.

SMITH, EDWARDS, and VOELKER, JJ., concurred with BLACK, J.

KELLY, J. (*for affirmance*). I do not agree with Mr. Justice BLACK's conclusion that the judgment appealed from should be set aside and the case be returned to equity for entry of an order denying defendant's motion to dismiss.

Defendant's answer alleged that the jury verdict in the law case was against both plaintiffs and defendant; that subsequent to said judgment the trial judge denied plaintiffs' motion for judgment *non obstante veredicto* on the grounds that the general verdict was not inconsistent with the special findings; that plaintiffs' appeal to the Supreme Court was dismissed because of plaintiffs' failure to properly prosecute, and that plaintiffs' subsequent motion to this Court to reinstate was also denied, leaving no recourse except to pay the judgment or suffer execution and garnishment; that plaintiffs were concurrently and contributorily negligent as found by the court and jury; that defendant admitted that if the damage to the Smith building in the law case

was caused solely by its negligence, then in that event the plaintiffs could be indemnified in the amount of the judgment paid by it, but not for any legal fees or other expenses incurred; that it is the law of the State of Michigan that if plaintiffs are contributorily negligent in any degree whatsoever, then they are barred from recovery and should seek recourse under the statute for contribution for their pro rata share; that the testimony in the Smith case definitely disclosed that plaintiffs were guilty of concurrent and contributory negligence, both passive and active.

Before passing judgment on defendant's motion to dismiss, the chancellor appraised the plaintiffs' bill by resorting to the file of the law case, as plaintiffs agreed that the bill and the law case record might be considered together.

The chancellor did not summarily dismiss the bill and was not guilty of coercion, as he advised plaintiffs that (1) they could remain in a court of equity under certain conditions, or (2) they could transfer to the law side of the court, or (3) they could refuse either course which would result in the chancellor dismissing the bill.

My Brother states that the plaintiffs made a mistake by their election to proceed in the court of law. His opinion reads:

"In retrospect it does appear that plaintiffs' counsel made a mistake when the chancellor's 3-pronged directive of June 29th was issued. He might well have said to the chancellor—'You have no right to enter such an order on motion to dismiss; if you think the bill does not state a case, go ahead and dismiss it because I can then appeal of right.'"

Mr. Justice BLACK concludes that the election plaintiffs made was "made under a coercive and

fully-cocked order of court [and] is no election at all."

I disagree with my Brother. Plaintiffs could have appealed the chancellor's decision. Justice BLACK states the action was "attemptedly tried at law." The action *was tried at law* with plaintiffs' consent and election. I believe plaintiffs made a binding election, which is determinative of this appeal.

Plaintiffs and appellants sought the following relief from this Court:

"Plaintiffs respectfully urge this Court to reverse the decision of the lower court and enter a judgment for them for the amount paid in satisfaction of the judgment, together with interest from the date of payment, and costs, and to remand this case to the circuit court for further proceedings on the matter of liability incurred by plaintiffs in defending the negligence case.

"In the alternative, plaintiffs respectfully urge this Court to remand this case to the circuit court with directions to transfer the case to chancery with permission granted to plaintiffs to amend their bill of complaint to permit recovery of indemnity or contribution and for further proceedings."

Justice BLACK, in setting aside the judgment and remanding the case, does not grant or discuss plaintiffs' requests for relief, confining the direction of this Court as follows: "The judgment appealed from should be set aside and the case should be returned to equity for entry of order denying defendant's said motion to dismiss."

The matter of contribution between joint tortfeasors, involved in this case, rests entirely on PA 1941, No 303 (CL 1948, § 691.561 *et seq.* [Stat Ann 1955 Cum Supp § 27.1683(1) *et seq.*]), which provides that a tort-feasor who has paid or settled a judgment may maintain a *separate* suit in chancery

against a fellow tort-feasor to recover a proportionate part of what the plaintiff has paid.

This is purely a statutory cause of action. The bill of complaint as it was when brought up in the trial court, and as it now is, says nothing about contribution. The sole claim made is for indemnity, which has always been recognized as giving rise to an action at law.

The statute further provides that any suit by one tort-feasor against another *must* be commenced within 6 months after settlement of the judgment. Obviously in the instant case more than 6 months has gone by. If the case goes back and is returned to the equity side of the court, the amendment to the bill of complaint would result in bringing in a new cause of action (that is, a statutory action) approximately 3 years after the right to bring suit for contribution arose. If this were done, plaintiffs would doubtless meet the objection that the time had gone by for them to declare on contribution.

The trial judge was correct in holding that a suit for indemnity would not lie on the equity side. The plaintiffs recognized the correctness of the rule when they consented to the transfer to the law side and filed a declaration setting up their claimed cause of action for indemnity. Their rights to recover on that theory were thoroughly litigated and decided adversely to plaintiffs.

Judgment affirmed.

DETHMERS, C. J., and SHARPE, and CARR, JJ., concurred with KELLY, J.