HUSTED v. CONSUMERS POWER COMPANY.

CONSUMERS POWER COMPANY v.
HERTEL-DEYO COMPANY.

DECISION OF THE COURT.

1. PARTIES—THIRD-PARTY PROCEDURE—COURT RULES.
The court rule providing that a defendant may bring in a third-party defendant by an ex parte motion upon notice to plaintiff does not create substantive rights in the principal defendant, as the substantive basis for defendant's claim must be found elsewhere before the rule becomes operative (GCR 1963, 204).

REFERENCES FOR POINTS IN HEADNOTES
[1] 39 Am Jur, Parties § 84 et seq.
[2] 1 Am Jur 2d, Actions § 58 et seq.
[3] 18 Am Jur 2d, Contribuution § 33 et seq.
[4, 6] 27 Am Jur, Indemnity §§ 16-19.
[5, 8, 11, 13] 58 Am Jur, Workmen's Compensation § 50 et seq.
[7] 27 Am Jur, Indemnity §§ 18, 19.
  Right of tortfeasor guilty of only ordinary negligence to be indemnified by one guilty of intentional wrongdoing, wanton misconduct, or gross negligence. 88 ALR2d 1355.
[9] 50 Am Jur, Statutes §§ 295, 296.
[10] 58 Am Jur, Workmen's Compensation § 357 et seq.
  Effect of workmen's compensation act on right of third-person tortfeasor to recover contribution from employer of injured or killed workman. 53 ALR2d 977.
[12] 18 Am Jur 2d, Contribution §§ 41-43.
[14, 15] 39 Am Jur, Parties §§ 85, 86.

2. Action—Controlling Law—Substantive Rights.

The substantive rights and liabilities of parties to an action are determinable according to the law as it stood when the causes alleged by the plaintiff accrued.

3. Contribution—Remedy—Torts.

The only remedy available to a joint tort-feasor is by way of chancery action for contribution taken in pursuance of statute, where there is no contractual relation between the tort-feasors (CL 1948, § 691.561 *et seq.*).

4. Indemnity—Torts—Master and Servant.

Allegation that crane operator's negligence was active and electric company's negligence was passive did not frame an issue for determination of the presence of a contract of indemnity, or of a tort-created right to indemnity from the crane operator to the electric company for sums latter might have to pay plaintiff, an employee of the crane operator, who was injured when the crane came into contact with electric company's wires.

5. Same—Master and Servant—Workmen's Compensation.

The fact that 2 defendants were joint tort-feasors would not be sufficient to strip 1 of them, employer of plaintiff, of the protection of the workmen's compensation act by requiring such employer to indemnify the other joint tort-feasor in the absence of a contract between them relative to indemnity (CL 1948, § 411.4).

6. Same—Torts.

Indemnity arising from tort, unlike contribution, is available only when the party appealing therefor is able to, and does, plead and prove freedom on his part from personal fault.

7. Same—Basis of Doctrine.

The doctrine of indemnity rests upon the proposition that, when one is compelled to pay money which in justice another ought to pay, the former may recover of the latter the sum so paid unless the one making the payment is barred by the wrongful nature of his conduct.

8. Workmen's Compensation—Exclusive Remedy.

Recovery of workmen's compensation benefits under the workmen's compensation act is the exclusive remedy of the employee against the employer (CL 1948, § 411.4).

9. Statutes—Intent.

Legislative intent of a statute is determinable properly by what was at the time of enactment rather than what might appear a half century later.

10. CONTRIBUTION—WORKMEN'S COMPENSATION.

The workmen's compensation act destroyed the cause for contribution claimed by a third-party plaintiff from the employer whose employee sued the third-party plaintiff (CL 1948, § 411.4).

11. WORKMEN'S COMPENSATION—TORTS—JOINT LIABILITY OF THIRD PARTY.

The claim of an injured employee against his employer for work-connected injury is solely for statutory benefits and the workmen's compensation act, providing the exclusive remedy against the employer, bars the latter from becoming a joint tort-feasor subject to contribution or indemnity to a third-party plaintiff against whom the employee seeks recovery of damages for injuries inflicted (CL 1948, § 411.4).

12. CONTRIBUTION—JOINT TORT-FEASORS.

The act providing for contribution between joint tort-feasors is applicable only where there is a common liability to an injured person in tort, the right of contribution being a derivative right arising from the common liability of the tort-feasors to suffer adverse judgment at the instance of the injured person (CL 1948, §§ 691.561–691.564).

13. JUDGMENT—SUMMARY JUDGMENT.

Third-party defendant, employer of injured plaintiff, was entitled to summary dismissal of primary defendant's third-party complaints, since the workmen's compensation act provides for the exclusive remedy an injured employee may have against his employer (CL 1948, § 411.4; GCR 1963, 117).

SEPARATE OPINION.

BLACK, J.

14. PARTIES—THIRD-PARTY PROCEDURE—DISCRETION OF COURT.

*Motions for impleading a third-party defendant are not grantable as a matter of casual course (GCR 1963, 204.1[1]).*

15. SAME—THIRD-PARTY PROCEDURE—DISCRETION OF COURT.

*The discretionary denial of a motion to implead a third-party defendant leaves all substantive rights intact for advancement when, if at all, the movant is hurt by payment or loss of some other property right (GCR 1963, 204.1[1]).*

Appeals from Midland; Holbrook (Donald E.), J. Submitted April 8, 1965. (Calendar Nos. 10, 11, Docket Nos. 50,772, 50,773.) Decided June 7, 1965.

Case by Claude A. Husted against Consumers Power Company, a Maine corporation, for personal injuries sustained when construction equipment came in contact with high voltage lines. Derivative action by Marie Husted for loss of companionship and consortium.

Hertel-Deyo Company, a Michigan corporation, added as third-party defendant in both cases. Complaints by third-party plaintiff, Consumers Power Company, against third-party defendant, Hertel-Deyo Company, employer of principal plaintiff, claiming its negligence was cause of injuries and asking judgment, if any, be paid by it. Motion by third-party defendant, Hertel-Deyo Company, for summary judgment and dismissal denied. Third-party defendant appeals. Reversed and remanded for dismissal of third-party complaints.

*Cicinelli, Mossner, Majoros & Harrigan* and *Baker & Baker,* for plaintiffs Husted.

*Smith, Brooker & Harvey* (*Carl H. Smith, Sr.,* of counsel), and *J. M. Smith,* for third-party plaintiff Consumers Power Company.

*McDonald, Anderson & Dykema* (*David W. Swets,* of counsel), for third-party defendant Hertel-Deyo Company.

PER CURIAM. One of our new rules of court is headed "Third-Party Practice." It is cited properly as GCR 1963, 204. Under its auspices appellant Hertel-Deyo, employer of plaintiff Claude A. Husted up to the time of sustenance by the latter of personal injuries upon which he declares, was drawn *ex parte* into these consolidated Midland county lawsuits. Hertel-Deyo moved promptly for summary dismissal of the primary defendant's third-party complaints and, upon leave granted, reviews an order

denying said motion. The order of denial is quoted in full, *infra*.

Plaintiff Claude A. Husted declared under the 1952 amendment (PA 1952, No 155 [CLS 1961, § 413.15; Stat Ann 1960 Rev § 17.189]) against primary defendant Consumers for personal injuries sustained December 3, 1959, during the course of his work for Hertel-Deyo. Plaintiff Marie Husted, wife of plaintiff Claude, declared against Consumers for loss of consortium and companionship occasioned by the same injuries. The suits were commenced November 13, 1962.

The declarations allege that plaintiff Claude A. Husted was working at the bottom of an excavation made for the purpose of constructing a new bridge; that the work required lowering of buckets of mixed cement to him by means of an overhead crane operated by a fellow employee; that on account of specified acts of negligence of defendant Consumers "the crane boom came into contact with some electrical poles, wires and apparatus, owned, operated, controlled and maintained by defendant" [Consumers]; that the overhead wires thus owned and maintained by Consumers were both negligently energized and negligently maintained and, on account of such contact, that he was electrically shocked to unconsciousness and severely injured.

The third-party complaints allege duty of third-party defendant Hertel-Deyo and breach of such duty "in the operation of said crane, boom, and bucket so as to prevent the same from coming in contact with the electric lines of the said defendant and third-party plaintiff so as to prevent injury to persons in and about the construction project including the plaintiff, Claude A. Husted." Such third-party complaints go on to allege the purely

legal conclusion that, in the event of entry of judgments for the plaintiffs "against the defendant and third-party plaintiff," the third-party defendant would, "on principles of indemnity and otherwise, be liable therefor to this defendant and third-party plaintiff."

Orders granting leave to implead Hertel-Deyo as third-party defendant having entered, the latter moved for summary dismissal assigning failure of the third-party plaintiff to state, in the third-party complaints, claims upon which relief could be granted. Plaintiffs supported the motion. Judge Holbrook denied it. The difficulty of decision faced by the judge was and now is highlighted by unusual provisos which, upon insistence of the judge, appear in such order:

"It is hereby ordered, that said motions be and the same are hereby denied; provided, however, if the defendant Hertel-Deyo Company is found to be negligent in the trial of this matter, and a judgment is rendered against the Hertel-Deyo Company, the amount of liability of the defendant Hertel-Deyo Company to the plaintiff and/or the defendant Consumers Power Company, by right of contribution, indemnification, or otherwise, shall not be in excess of the amount of workmen's compensation benefits paid or payable to the plaintiff, at the time such judgment is rendered; and provided, however, if the defendant Hertel-Deyo Company for itself and on behalf of its workmen's compensation carrier will file in said cause a disclaimer of any right to reimbursement for compensation paid and to be paid the plaintiff Claude A. Husted, said motion for summary judgment and to dismiss may then be renewed and will be granted."

The decisive question brought to review is whether the third-party plaintiff's complaints state causes

upon which relief may be granted. We hold they do not.

Some preliminary observations are in order. The first is made by reference to specific comment Honigman & Hawkins have appended to the third-party rule. They say of the rule, and we agree (1 Honigman and Hawkins, Michigan Court Rules Annotated, p 508):

"Rule 204 does not create substantive rights. The substantive basis for defendant's claim against the third-party defendant must be found elsewhere before the rule becomes operative. That basis may be found in principles of indemnity, subrogation, contribution, warranty, or other substantive right."

The next is that the substantive rights and liabilities of all present parties are determinable properly according to the law as it stood when the causes alleged by the two plaintiffs accrued in 1959. At that time, and quite aside from the remedies equity then provided (and yet provides despite the "merger" of law and equity)[1] for reimbursement, subrogation, exoneration, and indemnity (see authorities considered in *Hack* v. *Concrete Wall Co.,* 350 Mich 118 at 123–126; *Hack Investment Co.* v. *Concrete Wall Co.,* 356 Mich 416, 421–423, and *Ellis* v. *Phillips,* 363 Mich 587), the only remedy available to a joint tort-feasor against his brother in guilt was by chancery action for contribution taken in pursuance of the act of 1941 (CL 1948, § 691.561 *et seq.* [Stat Ann 1959 Cum Supp § 27.1683(1) *et seq.*]). The act of 1941 was changed in minor degree (to accommodate the new procedure only and not to change the substance) and re-enacted as section 2925 of the revised judicature act of 1961 (CLS 1961, § 600.2925 [Stat Ann 1962 Rev § 27A.2925]).

---

[1] See Joiner, The Union of Law and Equity, 55 Mich L Rev, p 1059.

*First: Has Consumers pleaded a right to indemnity?*

This must be the essence of Consumers' position as third-party plaintiff. It relies particularly on *Blackford* v. *Sioux City Dressed Pork, Inc.*, 254 Iowa 845 (118 NW2d 559). *Blackford's* specific underpinning is *Ryan Stevedoring Co., Inc.,* v. *Pan-Atlantic Steamship Corp.*, 350 US 124 (76 S Ct 232, 100 L ed 133). Neither case has application here, there being no allegation by Consumers upon strength of which this Court might conclude that a contractual relationship, express or equitably implied, for indemnity by Hertel-Deyo in favor of Consumers, existed at the time plaintiff was injured.

The specific link between *Blackford* and *Ryan* appears in the beginning sentences of division IV of *Blackford's* opinion (p 852):

"An authority directly in point on its facts and law is *Ryan Stevedoring Company* v. *Pan-Atlantic Steamship Corporation, supra.* It was there held that the action over against the employer by the third party held negligent to the employee, *was not based upon the employer's negligence, but on its breach of a duty owed by the employer to the third party arising out of the contract between them."* (Italics by present Court.)

Referring back to *Ryan:* The Supreme Court based its decision upon the *fact* of a contract of indemnity, saying (p 130):

"In the face of a formal bond of indemnity this statute[2] clearly does not cut off a shipowner's right to recover from a bonding company the reimbursement that the indemnitor, for good consideration, has expressly contracted to pay. Such a liability

---

[2] 33 USCA, § 901 *et seq.*, specifically the 1959 amendment, 33 USCA, 1964 Cum Pocket Part, § 933. The *Ryan* case arose before the amendment, and the insurance carrier for employer was to be reimbursed for sums advanced.—REPORTER.

springs from an independent contractual right. It is not an action by or on behalf of the employee and it is not one to recover damages 'on account of' an employee's 'injury or death.' It is a simple action to recover, under a voluntary and self-sufficient contract, a sum measured by foreseeable damages occasioned to the shipowner by the injury or death of a longshoreman on its ship."

The dissenting opinion of *Ryan*, dealing as it does with the legal position of an employer sued as here by third-party complaint, is of interest as we pass to the main question of effect upon this third-party complaint of the Michigan workmen's compensation law. That opinion was prepared by Mr. Justice Black. It bears, with his signature, the signatures of Chief Justice Warren and Justices Douglas and Clark.

On pages 140 and 141 of the report, after having depicted what employers gain and what they lose by the principle of workmen's compensation, and then having alluded to the right of third-party suit which the longshoremen's and harbor workers' compensation act[3] provides in favor of injured employees,[4] the opinion proceeds to conclusion that there was not *in fact* a contract for indemnity by plaintiff Palazzolo's employer in favor of the third-party shipowner which paid Palazzolo's judgment. Upon that conclusion the four Justices held (p 141):

"But the end result here is that this employer is actually mulcted in damages because its employee successfully prosecuted a third-party action. Liability is thus imposed because of the negligence of the employer's other employees. This the act forbids. Whether called 'common-law indemnity,' 'contribution,' 'subrogation,' or any other name, the re-

---

[3] 33 USCA, § 901 *et seq.*, specifically the 1959 amendment, 33 USCA, 1964 Cum Pocket Part, § 933. The *Ryan* case arose before the amendment, and the insurance carrier for employer was to be reimbursed for sums advanced.—REPORTER.

[4] This is the same right as was provided by amendment of our act in 1952 (CLS 1961, § 413.15 [Stat Ann 1960 Rev § 17.189]).

sult is precisely the same. The employer has to pay more 'on account of' an injury to his employee than congress said he should.

"I agree, of course, that if the employer here had made a contract, oral or written, agreeing to hold this shipowner harmless or to indemnify the shipowner against liability for injuries to petitioner's employees caused by the shipowner's negligence in whole or in part, the contract would have been valid and indemnity could have been obtained. For the longshoremen's act does not forbid employers under it to make independent agreements to indemnify others."

Thus the only reason the shipowner succeeded with its action for indemnity against the employer was on account of majority finding that the employer had contracted to indemnify the shipowner. In the case before us there is, of course, no claim that Hertel-Deyo correspondingly contracted to indemnify Consumers. And we cannot accept Consumers' bare legal conclusion, that Hertel-Deyo's negligence was "active" and Consumers' negligence was "passive," as framing an issue for determination of the presence of a contract of indemnity, or of a tort-created right to indemnity (as in *Westchester Lighting Co.* v. *Westchester County Small Estates Corp.,* 278 NY 175 [15 NE2d 567], cited by Consumers). On this record, looking at the two declarations in array with the two third-party complaints, one can only conclude that Consumers and Hertel-Deyo would, in the absence of intervention of a workmen's compensation law, be deemed joint tort-feasors.

Refer to Chief Judge Learned Hand's regularly quoted opinion of *Slattery* v. *Marra Brothers* (CA 2), 186 F2d 134. In that case most of the authorities cited by Consumers (*Winchester, supra,* included) were duly distinguished. Marra Brothers, sued for personal injuries by Spencer & Son's em-

ployee Slattery, sought by third-party complaint full indemnity from Spencer & Son. Marra Brothers' allegations were much the same as those of Consumers here. Having conceded, "at least when the putative indemnitor is not protected by a compensation act," that some courts have based indemnity merely upon a difference between the kinds of negligence of the two tort-feasors (giving as an instance where the negligence of the indemnitee is "passive" and that of the indemnitor is "active"), the court reached a conclusion this Court supports (p 139):

"So far as we can see therefore there is no body of sure authority for saying that differences in the degrees of fault between two tort-feasors will without more strip one of them if he is an employer, of the protection of a compensation act; and we are at a loss to see any tenable principle which can support such a result."

There is here no pleading by Consumers of any right to indemnity. Indemnity arising from tort, unlike contribution, is available only when the party appealing therefor is able to plead and prove freedom on his part from personal fault. This third-party plaintiff has pleaded no conclusions of fact which, if proved, would justify a finding or verdict that it was free from such fault. See *Indemnity Insurance Co. of North America* v. *Otis Elevator Co.*, 315 Mich 393 (171 ALR 266); also this key sentence appearing in another case upon which Consumers depends (*Lunderberg* v. *Bierman*, 241 Minn 349, 354 [63 NW2d 355, 359, 43 ALR2d 865, 871]):

"The whole doctrine of indemnity rests upon the proposition that, when one is compelled to pay money which in justice another ought to pay, the former may recover of the latter the sum so paid unless the one making the payment is barred by the wrongful nature of his conduct."

*Second: May Consumers have contribution, against Hertel-Dayo, the workmen's compensation law considered?*

Refer to *Wall* v. *Studebaker Corp.*, 219 Mich 434.[5] When *Wall* was decided in 1922, part 1, § 4 of the act (CL 1915, § 5426 [CL 1929, § 8410, Stat Ann § 17.144]) was relied upon and emphasized by the Court as now indicated (p 437):

"Any employer who has elected, with the approval of the industrial accident board, hereinafter created, to pay compensation as hereinafted provided, *shall not be subject to the provisions of section 1; nor shall such employer be subject to any other liability whatsoever,* save as herein provided for the death of or personal injury to any employee, for which death or injury compensation is recoverable under this act, except as to employees who have elected in the manner hereinafter provided not to become subject to the provisions of this act."

By the amendment of 1943 (PA 1943, No 245) said section 4 of part 1 presently reads (CL 1948, § 411.4 [Stat Ann 1960 Rev § 17.144]):

"Sec. 4. Where the conditions of liability under this act exist, the right to the recovery of compensation benefits, as herein provided, *shall be the exclusive remedy against the employer.*" (Italics by presently seated Court.)

The words of the statute stressed by the Court in *Wall*, and the unanimous opinion of *Wall*, make up the best evidence of presently sought legislative intent. When the workmen's compensation law was studied and legislatively considered, prior to and during the year of enactment (1912),[6] it would seem

---

[5] Followed expressly in *Varga* v. *Detroit Edison Co.*, 240 Mich 593, 594, and *Moran* v. *Nafi Corporation*, 370 Mich 536, 539, 545.

[6] See description of the continuing study of the act, prior to enactment thereof, in *Mackin* v. *Detroit-Timkin Axle Co.*, 187 Mich 8, 14, 15.

that the primordial intent of all participants was
that the *quo* to be received by the employer in re-
turn for his *quid* would be outright and absolute
immunity from liability (except as provided in the
act) stemming from each compensable injury.
True, the legislative assembly may not have foreseen
today's specific question and so may have had no
specific intent with regard thereto.[7]   Nonetheless,
according to *Wall,* that body made it clear that an
employer operating under the act and paying com-
pensation as required thereby should not—on ac-
count of or as a result of the compensable event—
be subjected "to any other liability whatsoever."

*Wall's* opinion was signed by Justices BIRD and
FELLOWS.. Justice BIRD was "there" when the work-
men's compensation law was studied and debated
prior to and during the year of enactment, first as
attorney general and then as Justice of the Court
(161 Mich iii).   Justice FELLOWS was elected attor-
ney general in 1912 (173 Mich iii) and continued to
hold that office until elected to the Court in 1916
(194 Mich iii).   Closer then to the legislature than
obtains today, the attorney general was the legal
adviser—exclusively and in fact—of the legislative
branch.   He of that day must be held as knowing
much more about the legislative intent of the times
than we can separately ascertain.

---

[7] "Interpretation is often spoken of as if it were nothing but the
search and the discovery of a meaning which, however obscure and
latent, had none the less a real and ascertainable pre-existence in the
legislator's mind.   The process is, indeed, that at times, but it is often
something more.   The ascertainment of intention may be the least of
a judge's troubles in ascribing meaning to a statute.   'The fact is,'
says Gray in his lectures on the 'Nature and Sources of the Law,'
'that the difficulties of so-called interpretation arise when the legis-
lature has had no meaning at all; when the question which is raised
on the statute never occurred to it; when what the judges have to do
is, not to determine what the legislature did mean on a point which
was present to its mind, but to guess what it would have intended on
a point not present to its mind, if the point had been present.' "
Cardozo, The Nature of the Judicial Process, pp 14, 15.

Bearing in mind that legislative intent is determinable properly by what was at the time of enactment, rather than what might appear a half century later—by hindsight (*Wayne County Road Commissioners* v. *Wayne County Clerk*, 293 Mich 229, 235; *Platt* v. *Union Pacific R. Co.*, 99 US 48, 63, 64 [25 L ed 424]; 50 Am Jur, Statutes, § 236, p 224), we depend much upon what members of the Court wrote at the time of or shortly after enactment of statutory provisions which, considered then as to purpose and intent, have remained unamended in substance (see comment, *Dyer* v. *Sears, Roebuck & Co.*, 350 Mich 92, 95). Pursuing these doctrines, the Court's ruling in the *Wall Case* must be regarded as controlling. If, in 1922, it appeared to the Court that section 5426 (of the compiled laws of 1915) was intended, in event of industrial injury to a minor, to destroy the separate right of action of that minor's parent, we suffer no trouble in holding that the same section has destroyed the cause for contribution this third-party plaintiff claims.

Turning now to the clear weight of authority outside Michigan; authority dealing with *contribution* distinguished from *indemnity*. When Larson's original work was written and published, that recognized authority considered the cases and their reasoning under this introductory paragraph (2 Larson's Workmen's Compensation Law, § 76.21, pp 230, 231):

"The great majority of jurisdictions have held that the employer whose concurring negligence contributed to the employee's injury cannot be sued or joined by the third party as a joint tort-feasor, whether under contribution statutes or at common law. The ground is a simple one: the employer is not jointly liable to the employee in tort; therefore he cannot be a joint tort-feasor. The liability that rests upon the employer is an absolute liability irre-

spective of negligence, and this is the only kind of liability that can devolve upon him whether he is negligent or not. The claim of the employee against the employer is solely for statutory benefits; his claim against the third person is for damages. The two are different in kind and cannot result in a common liability."

The editorial writers of American Law Reports, agreeing fully with Larson's analysis, have prepared a similar brief ("Effect of workmen's compensation act on right of third-person tort-feasor to recover contribution from employer of injured or killed workman," 53 ALR2d 977).

In addition to the above, see Larson's 1964 cumulative supplement of volume 2, p 219, "§ 76.21 Majority rule; no contribution by employer," and recent cases considered therein; also the most recently delivered volume of American Jurisprudence 2d (18 Am Jur 2d, Contribution, § 48, pp 69, 70). This last supports the majority rule and reads:

"This conclusion has been usually predicated on the fact that the employer and the third person are not under a common liability to the injured or killed workman, since the employer's liability is imposed, as well as limited, by the provisions of a workmen's compensation act, while that of the third-person tort-feasor rests on the principles of negligence."

One of the most valuable decisions found in foregoing annotations is *Baltimore Transit Co.* v. *State,* 183 Md 674 (39 A2d 858, 156 ALR 460). Holding that an employer's liability, resulting from industrial injury to his employee, is confined exclusively to the liability fixed by the workmen's compensation law, the court went on to decide whether the Maryland joint tort-feasors act of 1941 (a duplicate in substance of our PA 1941, No 303[8]) authorized "the

8 CL 1948, §§ 691.561–691.564 (Stat Ann 1959 Cum Supp §§

joinder of a conforming employer whose negligence caused or contributed to the happening of an accident." The holding (p 679) was that "the act is only applicable to a situation where there is a common liability to an injured person in tort"; also that "The right of contribution is a derivative right and not a new cause of action."[9]

Thus if Husted could not sue his employer (Hertel-Deyo), and we know he could not, Hertel-Deyo and Consumers cannot be joint tort-feasors by law. Consumers therefore cannot sue Hertel-Deyo for contribution should it be held to respond to plaintiffs in damages. See the reasoning of *Baltimore Transit, supra;* also the recent searching decisions of *United Air Lines, Inc.,* v. *Wiener* (CA 9), 335 F 2d 379 and *General Dynamics Corp.* v. *Adams* (CA 5), 340 F2d 271.

To conclude: We carefully avoid deciding that there cannot be, in any circumstances of noncontractual relationship between a sued defendant and the plaintiff's employer, recovery over against the employer. See discussion of this feature of the question by Larson, "C. Contract-type remedy in recovery over; noncontractual relation between parties." (2 Larson 1964 Supp at pages 217–219.) An obligation to reimburse can be implied by equitable principles, provided always the relator is without personal fault. Loss occasioned by vicarious liability, there being no such personal fault of the one seeking indemnity or reimbursement, is an example. See *Lunderberg* v. *Bierman, supra,* 352, and appli-

---

27.1683[1]–27.1683[4]), repealed 1961. See, currently, CLS 1961, § 600.2925 (Stat Ann 1962 Rev § 27A.2925).—REPORTER.

[9] The Maryland supreme court quoted, from a committee report, one of those rare epigrams of the law which succeeds in saying it all in one short sentence (p 680):

"The common obligation contemplated by this act is the common liability of the tort-feasors to suffer adverse judgment at the instance of the injured person whether or not the injured person elects to impose it."

cation in that case of Restatement's principle (Restatement, Restitution, § 96, p 418); also the Cooley quotation appearing in *Township of Hart* v. *Noret,* 191 Mich 427, 432 (LRA 1916F 83). In the case at bar, however, Consumers has supplied nothing upon which such an obligation may be implied. Nor has it pleaded anything in the nature of an agreement to indemnify, as in the *Ryan Stevedoring Case.*

Reversed and remanded for entry of order dismissing the primary defendant's third-party complaints. Plaintiffs and appellant Hertel-Deyo Company shall have costs on appeal.

Although we deem such a provision needless, Consumers may if desired have included in the order of dismissal a declaration of no prejudice to its original right, if any, to recover over against Hertel-Deyo should it be compelled to satisfy—in whole or in part—any judgment or judgments these plaintiffs may recover in the causes now at issue.

T. M. Kavanagh, C. J., and Dethmers, Black, Souris, Smith, O'Hara, and Adams, JJ., concurred.

Kelly, J., concurred in result.

Black, J. (*concurring*). I concur, as my signature attests. It seems though that something should be added to arrest an errant trend, a trend which must be due to misconception of judicial duty when a motion for leave to implead is presented (*ex parte* or on notice) under GCR 1963, 204.1(1). Such misconception is more or less at large, the cases before us and previous applications for leave to appeal considered. Surely it has gripped both the circuit judge and counsel for this third-party plaintiff as evidenced by proceedings below and briefs submitted here.

No judicial officer of Judge Holbrook's caliber would have haled in *ex parte,* and then kept in despite its protest, this third-party defendant absent conviction that our Court expects such action as a matter of course under 204.1(1). The misgivings of the judge become evident as one reads each special proviso he included in the order now reviewed (the order is quoted in our opinion *per curiam*). Such misgivings, the ill-advised trend mentioned above, and the rather obvious fact that the present consolidated cases long since could and doubtless would have been tried to final judgment but for these discretionarily dispensable third-party proceedings; all this has spurred the next ensuing paragraphs for recording in our books. Outstanding is the fact, attested by today's opinion of the Court, that this primary defendant could and yet may adequately protect whatever right to indemnity or contribution that may ripen in its favor against Hertel-Deyo. All it need do is await—with or without voucher[1]—the outcome of the main trial and then, if compelled to pay plaintiffs, proceed to sue upon the right thus allegedly accruing.

This order for impleader of Hertel-Deyo was presented *ex parte* and granted *ex parte.* True (the primary defendant having delayed the filing of answers, some seven months, until the *ex parte* order was granted), such practice is technically authorized by 204.1(1). The question is whether it can be regarded as good practice, and whether the bench and bar are aware that motions for impleader under 204.1(1) are not grantable as a matter of casual course. This Court, on its own motion, should answer these questions firmly.

[1] See comment "5. Vouching in" (1 Honigman and Hawkins, Michigan Court Rules Annotated, p 510), *Grant* v. *Maslen,* 151 Mich 466 (16 LRA NS 910), and *Grand Rapids Lumber Co.* v. *Blair,* 190 Mich 518.

The then members of this Court, and the zealot
supporters of our new rules, must have failed during
the annual and regional judicial meetings of 1962
to drive home the fact that third-party practice, tak-
en literally as it was from Federal Rule 14, ar-
rived in Michigan with representations supported
by uniform Federal precedent that a motion to im-
plead, under 204.1(1), is addressed to sound judicial
discretion and that the rule creates no matter of
course *right to implead* distinguished from the right
to *move to implead.*[2]

The trial and appellate courts of the Federal sys-
tem are unanimously agreed that a motion for im-
pleader, by the primary defendant, calls up the
exercise of sound judicial *discretion.* There is no
*right* under Federal Rule 14 to lasso and retain a
stranger who, allegedly or otherwise, may be liable
to the primary defendant. See the list of Federal
decisions appearing in the original and supplemen-
tal annotations of Federal Rule 14 (28 USCA, Rule
14, note 15; also the text of 1A Barron and Holtzoff,
Federal Practice and Procedure, § 423, p 647 headed
"Discretion of Court."). Honigman and Hawkins
concede this (1 Honigman and Hawkins, Michigan
Court Rules Annotated, p 507). So do Needham
(RJA: Special Proceedings and Appeals, 1964
Supp, pp 158, 159, quoted *infra*) and Gilmore (1
Michigan Civil Procedure Before Trial, pp 332, 333).
Forsooth, if carefully selective consideration is not
given to each 204.1(1) motion for impleader, the
new rules will never succeed in measuring up to that

---

[2] The amendment of Federal Rule 14, effective July 1, 1963, has
not been overlooked. See 28 USCA, Rules 12 to 16, 1964 Cum Pocket
Part p 45, and 1A Barron and Holtzoff, Federal Practice and Pro-
cedure, 1964 Pocket Part, § 421, p 86. As said of the 1963 amend-
ment, in *National Fire Ins. Co.* v. *Daniel J. Keating Co.*, 35 FRD
137, 140:

"Impleader under Rule 14 has quite consistently been held to be
*within* the sound discretion of the court, and this discretion has not
been impaired by the 1963 amendment."

trumpeted tout which accompanied their delivery to the profession in the fall of 1962.[3] Before us is a significant record which proves such conclusion.

These consolidated cases, pending as they are in the not-overburdened Midland circuit on declarations and answers, could and should have been tried to judgment long ago. Had that been done, and had judgment gone against primary defendant Consumers, its right to sue Hertel-Deyo for indemnity or contribution would have remained unimpaired, by limitation or otherwise, just as it is now. See CL 1948, §§ 691.561–691.564 (Stat Ann 1959 Cum Supp §§ 27.1683[1]–27.1683[4]); CLS 1961, § 600.2925, subd (4) (Stat Ann 1962 Rev § 27A.2925, subd [4]). The only difference between the two methods of procedure is that the one pursued under 204 has delayed justice needlessly and expensively (it was bound in any reasonably foreseeable event to result in two separate trials anyway); whereas the former and yet available method will, yes, require payment by Consumers of an entry fee, in the sum of ten whole dollars, for the separate potential suit of Consumers against Hertel-Deyo. Yes, the outlay of that ten dollars will hurt. But the outlay thereof should be made, when and if needful, to avoid the further confounding of justice by this new demon of procedural formalism.

Now, really, the supporters of matter-of-course third-party practice do not allege the extra entry-

---

[3] In the "Introduction" to the GCR of 1963 and the RJA of 1961, which appears in the special pamphlet issued by West Publishing Company to the Michigan bench and bar in 1962, this concluding sentence appears:

"As these new laws of procedure become more fully understood and utilized, they will earn recognition as the greatest achievement of our generation in advancing the cause of the improvement in administration of justice in this State."

It must be that Rule 204 is not as yet "fully understood and utilized." So far its experience in Michigan does not tend to support that advance billing, "the greatest achievement of our generation."

fee cost, of the tested and now alternate practice, as
a reason for supersession of such alternate practice
by the scientific new. They simply say that the new
"avoids circuity of action." But does it? Could it
ever have done so here? Is it doing so in other in-
stances where it is being employed by rote, say as
candidly conceded by Consumers' counsel at oral
argument of these cases?

The tragic fact is that, since judges seated here
rarely admit mistakes, Michigan is stuck with third-
party practice and will not return by rule to the time
tried practice of "vouching" a party claimed to be
liable over. It behooves us, then, to assure that
204.1(1) practice be made applicable only to cases
which from their nature will not require that the
trial judge unscramble an omelet of newfangled
pleadings he has painfully and expensively mixed,
folded, and baked into a pretrial summary pursuant
to the procedural cookbook of 1963, only to find when
he gets through that he has on his hands much more
"circuity of action," the dissection of which can be
accomplished only by resort to separate trials under
GCR 1963, 505.2. Sure, if the case at hand discloses
a genuine need for application of Rule 204.1(1), let
that rule be applied. But let there be real need, not
just professional tactics. The discretionary denial
of a motion under 204.1(1) leaves all *substantive
rights intact for advancement when, if at all, the
movant is hurt by payment or loss of some other
property right.*

A part of what is deplored here must be attributed
to the inexplicable invitation to *ex parte* practice
204.1(1) extends.[4] Another is manifestly due to the

───────────────

[4] Why Rule 204.1(1) invites or permits *ex parte* action eludes me,
even after having read tomes about the theoretical glories of third-
party practice. No one as yet has given an understandable reason for
peremptory action under the rule. Indeed, action of that kind is more

introduction into Michigan practice of the "matter
of course" suggestions which appear in 1 Honigman
and Hawkins, Michigan Court Rules Annotated, p
507; also to that sentence which reads (same page):

"Where the motion [for leave to implead] is sea-
sonably made, there will be few cases in which it
should be denied."

Although no reference to authority was cited in
support of the sentence just quoted, it appears as
having been lifted directly from the correspondingly
unsupported text of 1A Barron and Holtzoff at pages
648, 649. If the quoted sentence is right for Federal
practice, it is wrong for Michigan practice. It is
wrong enough to suggest that the reverse should be
Michigan's watchword. The reason lies in the differ-
ence between the classes of litigation which flow reg-
ularly through the two jurisdictions; also in the fact
that "a Federal case," unlike most State cases, is
ordinarily weighty enough to carry the cost and put
up with the delays of third-party and other similar
before-trial maneuverings.

The antitrust conspiracy cases, the maritime cases,
the patent and copyright controversies, the mass of
complex litigation arising under Federal statutes, to
mention a few only of the types that are generally
unknown in Michigan probate and circuit courts,
are regularly susceptible of third-party practice.
As for jurisdictional Michigan, however, what gen-
eral type of litigation, not based on contractual rela-
tionships, is thus susceptible or subject to "matter
of course" treatment under 204.1(1)? There is none.

*Summary:* The principled moral of all this is
that every *ex parte* motion to implead under 204.1

than apt to put the judge on the psychosomatic defensive when he is
asked to vacate or dissolve what without notice he has done.

This last, by the way, is one of the reasons for our recent restric-
tion against issuance of injunctions *ex parte*. See GCR 1963, 718.
If there is need for restriction there, surely there is need for outright
elimination of *ex parte* action under 204.1(1).

(1) should be flatly denied; also that, even when presented on notice, it should be denied in favor of traditional practice if doubt remains as to its real purpose.  Michigan got along very well for more than a century without third-party practice, which remark returns thought to the cases of these plaintiffs.  They are classic examples of what happens when motions pursuant to that practice are not carefully scanned for worth against:

"(1) The probability of delay, *United States* v. *Jollimore* (D Mass, 1949), 2 FRD 148.

"(2) Complications of the trial, *McPherrin* v. *Hartford Fire Ins. Co.* (D Neb, 1940), 1 FRD 88.

"(3) The timeliness of the motion, *Casey* v. *Calmar Steamship Corp.* (D Del, 1956), 138 F Supp 751.

"(4) The similarity of evidence, *Jones* v. *Waterman Steamship Corp.* (CA 3, 1946), 155 F2d 992.

"(5) The possibility of prejudice to the plaintiff, *Federal Deposit Insurance Corporation* v. *National Surety Corp.* (ED Wis, 1950), 13 FRD 201; *Casey* v. *Calmar Steamship Corp., supra.*

"(6) Possibility of prejudice to third-party defendant, *American Fidelity & Casualty Co.* v. *Greyhound Corp.* (CA 5, 1956) 232 F2d 89."[5]

The words of one Federal district judge, fed up as he was with indiscriminate grant of motions to implead third-party defendants, will serve to end this separate composition.  Noting that three previous decisions in his district had gone the other way "of course," and that of the four cases examined by him only *Buchholz* v. *Michigan Motor Freight Lines, Inc.* (ED Mich, 1956), 19 FRD 407, stood for his views, the judge tested carefully the third-party complaint before him (which as to judicially noticeable purpose was much like those of

---

[5] Needham, RJA: Special Proceedings and Appeals, 1964 Supp, p 159; 1 Gilmore, Michigan Civil Procedure Before Trial, p 333.

Consumers here).   He concluded (*Goodhart* v.
*United States Lines Company* [SD NY, 1960], 26
FRD 163–165):

"I recognize that three earlier decisions in this
district have gone the other way, the third expressly
proceeding on the ground of the desirability of main-
taining a uniform approach and consistent answer
to such motions.   Much as I would like to keep in
step with my brethren my conviction against the
practice of joining straw-man defendants is so
strong that I feel that a precedent following that
conviction ought to be recorded before the present
trend becomes ingrained."